P, T & L CONSTRUCTION CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. COMMISSIONER, DEPARTMENT OF TRANSPORTATION, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued October 6, 1969—Decided March 2, 1970.

*Mr. Theodore W. Geiser* argued the cause for appellant (*Messrs. Pindar, McElroy, Connell, Foley and Geiser,* attorneys).

*Mr. Stephen Skillman,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J.  Plaintiff sues the State on a written contract for public construction.  The meritorious issue is whether plaintiff is entitled to the balance of $110,360.64 which the State withheld as damages for alleged delay in completion of the job.  The merits were never reached because the trial court sustained the State's defense of immunity from suit.  We certified plaintiff's appeal before argument in the Appellate Division.

The Legislature has expressly dealt with this specific claim. After judgment went against it in the present case, plaintiff presented the claim to a subcommittee of the Joint Legislative Appropriations Committee.  The subcommittee found for plaintiff in full, and the award was included in a supplemental appropriations bill (S. 813 (1969)).  The Governor however vetoed that item, saying (message of June 27, 1969):

"I have decided, for the reasons stated herein, to delete entirely the contested claims from Senate Bill No. 813, which I have signed today.  I wish to make it absolutely clear that my action is in no way a determination of the merits of these claims.  From the record presented to me, it would have been absolutely impossible to make such a determination.  Indeed, it is my desire that no prejudice whatsoever should attach to the rights of the claimants to present their claims again, either before a new forum or once again to appropriations subcommittee."

After restating specific recommendations he had theretofore made with respect to proceedings before a claims committee, the Governor said:

"Since the Legislature has not seen fit to act on my suggestions for reform in its own procedure, I am prepared to recommend and support a new approach, namely, that the Legislature consider eliminating the doctrine of sovereign immunity as a bar to claims against the State based on contractual liability.  It seems to me that removal of these contractual claims to the courts would guarantee a fair adjudication to both parties and, most importantly, to the citizens of the State."

He added his willingness to support, with a few minor changes, a pending bill (A. 821) which would have committed such controversies to the judiciary.

Having thus failed, plaintiff continues to press the present action. Plaintiff agrees that *Strobel Steel Construction Co. v. State Highway Commission,* 120 *N. J. L.* 298 (E. & A. 1938), stands in the way, but says, and we think correctly, that it should be overruled.

*Strobel* also involved a construction contract for a public improvement. The court applied a flat rule that the State could not be sued without its consent. Plaintiff there conceded such a rule, but sought, unsuccessfully, to infer a statutory consent to be sued (pp. 301–302).

*Strobel* overstated the rule of immunity, for sundry actions had succeeded against the State. See *East Orange v. Palmer,* 47 *N. J.* 307, 328–329 (1966). *Strobel* did not discuss the thesis of *Haycock v. Jannarone,* 99 *N. J. L.* 183 (E. & A. 1923). That was a suit for trespass brought by the owner of real property against a construction contractor. The contractor denied encroaching on plaintiff's property but asserted that if there were an encroachment, he nonetheless was performing a contract with the State Highway Commission which had the right to enter under its power to condemn. This defense was sustained. The court pointed out that under a statute the State Highway Commission could take possession before condemnation and said that if in fact there was a taking, plaintiff could *mandamus* the highway commission to institute condemnation proceedings. But the question remained as to how a money judgment could be collected under those circumstances. As to this, the court said (p. 185):

"When the damages have been thus ascertained it is not to be presumed that the legislature has not, or would not, make provision to pay for the land which it had taken in advance of compensation for the benefit of the state. The creation of such an agency with the power to condemn implies that the legislature will make provision to pay the award, otherwise we would have to assume that the state intended to violate the constitution by taking land without compensation, a thought not to be tolerated."

The point of immediate significance is that *Haycock* expressed a willingness to find and declare the State's dollar liability even if no moneys had been appropriated and payment would depend upon the Legislature's acquiescence. So also in *Amantia v. Cantwell,* 89 *N. J. Super.* 7 (App. Div. 1965), the court declared the claimants' entitlement to a pay differential under a statute notwithstanding that "Whether or not petitioners receive the money to which they are clearly entitled rests exclusively with the Legislature" (at 13).

That a constitutional guarantee was involved in *Haycock* or a statute in *Amantia* cannot be the decisive fact, for whatever the basis of the asserted claim, the critical question must be whether the judiciary should declare the dollar obligation of the State even though payment will depend upon whether the Legislature will abide by the court's judgment and pay it. In *Fitzgerald v. Palmer,* 47 *N. J.* 106 (1966), we declined to say whether the courts should entertain negligence actions against the State. We did not put the issue in terms of the power of the judicial branch to decide for the State what in justice it should do. Rather we said that since payment of such judgments would depend upon the willingness of the other branches to provide for it, the critical question was whether the judicary should exert its power in advance of some indication that the other branches of government would abide by the judgment:

"The State's immunity from suit does not rest upon the notion that the State can do no wrong. Indeed the State can do wrong, so much so that it can expend public moneys to compensate for the wrong it does. In sustaining the legislative power to pay, we explain the State thereby merely recognizes a 'moral' obligation, by which we mean only that the obligation is 'moral' rather than 'legal' because there is no machinery to compel the State to do what in justice it ought to do. Thus the State's 'immunity' involves ultimately the question, which branch of government shall decide for the State when it shall pay? In the abstract, a question of that kind would seem 'judicial' enough, in the absence of a controlling policy expression by the Legislature. But the judiciary could not enforce a judgment if it gave one. No money may be drawn from the State treasury but for appropriations made by law. *Const., Art.* VIII, § II, ¶2. The

judiciary could not order the Legislature to appropriate money, or the Governor to approve an appropriation if one were made. *Gallena v. Scott,* 11 *N. J.* 231, 238–239 (1953) ; *cf. Baltzer v. State of North Carolina,* 161 *U. S.* 240, 16 *S. Ct.* 500, 40 *L. Ed.* 684 (1896). Nor would it do to issue a writ of execution to sell the State House or the courtroom furnishings. *Cf.* 49 *Am. Jur., States, Territories, and Dependencies,* § 104, pp. 319–320. Thus the problem arises from the circumstance that under our system of separation of powers, the judiciary, not controlling the purse strings, cannot act effectively alone." (47 *N. J.* at 108).

Shortly thereafter, we decided that the State was obligated to pay to a municipality taxes assessed upon property before the State condemned it. *East Orange v. Palmer, supra,* 47 *N. J.* 307. After referring to the doubtful origin of the concept of sovereign immunity and pointing to a number of cases in which our courts refused to turn a litigant away *(pp.* 327–329), we proceeded to adjudge the merits of the claim. We said that we would assume sufficient moneys were appropriated to cover this liability, but we added, citing *Haycock v. Jannarone, supra,* that we had no doubt that the Legislature would "conform to the declaration of obligation and make payment" *(p.* 330).

Later in *O'Neill v. State Highway Department,* 50 *N. J.* 307 (1967), we held that the judiciary should decide a tideland title dispute in a suit brought by a citizen against the State. Again we harbored no doubt as to the power of the courts to decide what was just as between the State and a civil litigant. We said in broad terms that "today courts are disposed to hear an action against the State unless good reason stands in the way" (p. 315). The immunity concept was deemed to involve only the question whether a court should refuse to decide a justiciable controversy because satisfaction of a judgment would depend upon the concurrence of the other branches of government (p. 315). Finding no such problem in an action to declare the ownership of lands, we ordered a trial of the merits.

Plaintiff suggests that since it seeks no more than the balance of a contract which was duly authorized, we may assume funds are on hand which could be ordered to be

applied in payment. Whether appropriated moneys are still on hand, we do not know, but we think it is time to settle the larger question whether the courts should be open to a person who holds a contract with the State even though satisfaction of a favorable judgment would depend wholly upon the willingness of the Legislature to accept the judgment and provide for payment.

If our coordinate branches made it plain that they would be indifferent to our judgments in such matters, we would indeed be loath to be party to the spectacle such a conflict of wills would create. But there is no reason to suppose that our efforts will be ignored. The immunity concept is judge-made. Its roots are hard to find, as others have carefully noted. *East Orange v. Palmer, supra,* 47 *N. J.* at 328. Obviously there should be an established forum in which all such claims may be presented as of right and upon known principles. The judiciary of course is able to meet that need. This is not to say that another tribunal would be unsuitable. The point is that a court of claims has not been created, and until one is established, if it should be, the judiciary ought not to withhold its hand on a mere assumption that its coordinate branches would want it that way.

We add that other jurisdictions have held, on one theme or another, that a State may be sued in its own courts on contracts it authorized. See *Souza & McCue Constr. Co. v. Superior Court,* 57 *Cal.* 2d 508, 20 *Cal. Rptr.* 634, 370 *p.* 2d 338, 339 (Sup. Ct. 1962) ; *Regents of University System of Ga. v. Blanton,* 49 *Ga. App.* 602, 176 *S. E.* 673, 675 (Ct. App. 1934) ; *Grant Constr. Co. v. Burns,* 92 *Idaho* 408, 443 *P.* 2d 1005, 1010 (Sup. Ct. 1968) ; *Carr v. State ex rel. Du Coetlosquet,* 127 *Ind.* 204, 26 *N. E.* 778, 779, 11 *L. R. A.* 370 (Sup. Ct. 1891) ; *Meens v. State Bd. of Ed.,* 127 *Mont.* 515, 267 *P.* 2d 981, 983 (Sup. Ct. 1954) ; *Todd v. Bd. of Educational Lands and Funds,* 154 *Neb.* 606, 48 *N. W.* 2d 706, 710 (Sup. Ct. 1951).

The judgment is reversed and the matter is remanded for further proceedings not inconsistent herewith.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—NONE.