**V. S. DiCARLO CONSTRUCTION COMPANY, INCORPORATED, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 56142.**

Supreme Court of Missouri,
Division No. 1.

July 17, 1972.

Motion for Rehearing or to Transfer to
Court En Banc Denied
Oct. 9, 1972.

Richard W. Miller, George T. O'Laughlin and Miller & O'Laughlin, Kansas City, for appellant.

John C. Danforth, Atty Gen., Louren R. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Chief Justice.

The question presented by this appeal is whether contract rights of a private citizen under a validly executed contract with the State may be asserted and established in a judicial proceeding.

We have jurisdiction because the State of Missouri is a party and more than $30,000 is involved. At the time this appeal was taken, those facts placed jurisdiction of the appeal in this Court. Article V, § 3, Constitution of Missouri, 1945, V.A.M.S. § 477.040, V.A.M.S.

The trial court sustained a motion to dismiss filed by the State. The parties agree that the only ground urged in support of such action was that sovereign immunity of the State prevented the maintenance of said suit and that the court dismissed the petition on that basis. We reverse and remand.

The pleadings disclose that the General Assembly passed and the Governor signed an Act appropriating money to the Division of Planning and Construction for construction of a building for the Adjutant General and Emergency Operation Center in Jefferson City, Missouri. (§ 9.040, C.C.S.H.B. No. 9, an Act of the 74th General Assembly, 1967.) [1] Thereafter, the State

prepared plans and specifications and advertised for bids. Plaintiff was the low bidder and subsequently a contract between plaintiff and the State was approved by the Board of Public Buildings and executed on behalf of the State by the Director of the Division of Planning and Construction. Chap. 8, V.A.M.S.

Plaintiff's petition consists of six counts. Count I seeks recovery for extra compensation for rock excavation above the elevation at which the specifications stated rock would commence. This count seeks to recover at the unit price specified in the contract for extra rock excavation. Count II asserts an alternative ground of recovery for the same rock excavation. Count III complains of wrongful assessment of liquidated damages and seeks recovery of the balance of the contract price due but for assessment of liquidated damages. Count IV seeks recovery for extra work which plaintiff was required to perform but which it says was not its obligation under the contract. Count V seeks recovery for the cost of some repairs resulting from acts by other contractors employed by the State. Count VI seeks recovery for extra expense caused by a change in sequence of the work directed by the State.

For the purposes of this appeal, the petition alleges sufficient facts to state a cause of action, but we do not reach or consider on this appeal the merits of any of plaintiff's contentions. Those questions will be considered on remand by the trial court. Our decision is limited to the single issue of whether the doctrine of sovereign immunity denies to plaintiff in this case the opportunity to have such contract claims against the State heard and adjudicated.

As the brief filed on behalf of the State observes, "The courts of this State have consistently held that the State may not be sued without its consent." Kleban v. Mor-

1. The funds were reappropriated in subsequent legislative sessions: § 14.040, C.C.S.H.B. No. 14, an Act of the 74th General Assembly, First Extra Session; § 14.040, S.C.S.H.C.S.H.B. No. 14, an Act of the 75th General Assembly, 1969.

ris, 363 Mo. 7, 247 S.W.2d 832, 836.[2] However, plaintiff does not attack the doctrine of sovereign immunity as such or ask that we discard it. Instead, its position is that the doctrine does not bar suit in this instance because the State has consented to be sued by entering into a validly authorized contract with plaintiff.[3] It is plaintiff's position that when the General Assembly appropriated funds for the requested office building for the Adjutant General, it impliedly waived the sovereign immunity of the State and consented that the State might be sued in connection with questions arising in the performance of that contract.

 Is the plaintiff's analysis of the effect of legislative approval of the contract for erection of the Adjutant General's building sound? Can it properly be said that by this action the General Assembly consented that the State should be bound by the terms of the construction contract and that it might be sued for any breach thereof? We answer these questions in the affirmative. Our conclusion is based on the assumption that the General Assembly did not intend a contract completely lacking in mutuality—one obligating the contractor to live up to its promises but imposing no binding obligation or responsibility on the State. It is based on the conclusion that when the State enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses and binds itself to performance, just as any private citizen would do by so contracting.

Such a view was expressed by the Supreme Court of Delaware in George &

Lynch, Inc. v. Delaware, Del., 197 A.2d 734, 736, when it said:

"By 17 Del.C. § 132(b) (9), the State Highway Department is authorized to 'make and enter into any or all contracts, agreements or stipulations.' It must be assumed that the General Assembly, in granting to the State Highway Department the power to contract, intended that it should have power to enter into only valid contracts. A valid contract is one which has mutuality of obligation and remedy between the parties to it. 1 Williston on Contracts (3rd Ed.) § 1. It follows, therefore, that in authorizing the State Highway Department to enter into valid contracts the General Assembly has necessarily waived the State's immunity to suit for breach by the State of that contract."

Cases from other states have expressed like views. In Ace Flying Service, Inc. v. Colorado Department of Agriculture, 136 Colo. 19, 314 P.2d 278, 280, the court said:

"All contracts entered into by the State of Colorado or by any of the Departments in its behalf, are required to be awarded, pursuant to statute, to the lowest responsible bidder. Once entered into they are binding upon the state as well as upon the other contracting party. To hold that the state may enter into a contract by which the other party is compelled to expend large sums in acquiring material, machinery and personnel to enable it to perform its obligation, and then arbitrarily repudiate the contract relegating the injured party to the doubtful remedy of appealing to the legislature for justice in the form of a bill for relief, would be to sanction the highest type of governmental tyranny.

2. The only expression in any opinion which has suggested consideration of possible change other than by legislative action was in a concurring opinion in Wood v. County of Jackson, Mo., 463 S.W.2d 834, 836.

3. Plaintiff asserts as an additional basis for its right to maintain this action the contention that refusal by the State to satisfy or pay its obligations based on

contract would constitute a taking without due process of law, in violation of the provisions of the Constitution of Missouri and the Constitution of the United States. Some courts have so held. See Grant Construction Co. v. Burns, Idaho, 92 Idaho 408, 443 P.2d 1005. However, in view of the decision we reach on the first point asserted, we do not reach or consider this contention.

"The applicable principle is that when a state enters into authorized contractual relations it thereby waives immunity from suit."

In Regents of University System of Georgia v. Blanton, 49 Ga.App. 602, 176 S.E. 673, 675, the court said:

"A state or any of its departments entering into contracts lays aside its attributes of sovereignty, and binds itself substantially as one of its citizens does when he enters into a contract, and, in general, its contracts are interpreted as the contracts of individuals are, and are controlled by the same laws. Ohio Life Ins. & Trust Co. v. Debolt, 16 How. 416 [57 U.S. 416], 14 L.Ed. 997; notes, 42 L.R.A.(N.S.) 117. Where there is an act of the state Legislature authorizing a contract by a state department, the courts have power to enforce the contract against the state. Carr v. State [ex rel. Coetlosquet], 127 Ind. 204, 26 N.E. 778, 11 L.R.A. 370, 22 Am.St.Rep. 624, and notes."

In the case of Carr v. State ex rel. Coetlosquet, supra, cited in the Georgia case, the court expressed the rule thus, 26 N.E. l.c. 779:

"In entering into the contract it laid aside its attributes as a sovereign, and bound itself substantially as one of its citizens does when he enters into a contract. Its contracts are interpreted as the contracts of individuals are, and the law which measures individual rights and responsibilities measures, with few exceptions, those of a state whenever it enters into an ordinary business contract. * * * The principle that a state, in entering into a contract, binds itself substantially as an individual does under similar circumstances, necessarily carries with it the inseparable and subsidiary rule that it

abrogates the power to annul or impair its own contract. It cannot be true that a state is bound by a contract, and yet be true that it has power to cast off its obligation and break its faith, since that would invoke the manifest contradition that a state is bound and yet not bound by its obligation. * * *"

In Todd v. Board of Educational Lands and Funds, 154 Neb. 606, 48 N.W.2d 706, 710, the court said:

"This is true of a lease made by the state. It, by entering into a contract, abandons its attributes of sovereignty and binds itself, to the extent of its power to contract, substantially as an individual does when he makes a contract. The state may not impair any of the substantial rights secured by its contract to a citizen with whom it contracts. * * *"[4]

We interpret the act of appropriating money for this construction contract as consenting to suit thereon, if necessary, because to do otherwise would be to assume bad faith on the part of the General Assembly. The Supreme Court of Delaware expressed this very well in the case of George & Lynch, Inc. v. Delaware, supra, 197 A.2d l.c. 736, when it said:

"Any other conclusion would ascribe to the General Assembly an intent to profit the State at the expense of its citizens. We are unwilling to assume that the General Assembly intended the State to mislead its citizens into expending large sums to carry out their obligation to the State and, at the same time, deny to them the right to hold the State accountable for its breach of its obligations. To state the proposition is to demonstrate its injustice; indeed, so unjust is it that it might amount to the taking of property without due process of law."

4. Other decisions announcing a similar doctrine include: Means v. State Board of Education, 127 Mont. 515, 267 P.2d 981; Grant Construction Company v. Burns, 92 Idaho 408, 443 P.2d 1005; P, T & L Construction Co. v. Commissioner, Department of Transportation, 55 N.J. 341, 262 A.2d 195. We recognize that the factual and perhaps statutory situations in these cases from other states differ but the principles announced as to amenability of the State to suit on valid contracts are pertinent.

Our conclusion that the General Assembly intends that suit may be maintained on contracts with the State is fortified by some of the language in § 490.460, V.A.M.S. That provision is in the section of the statutes on evidence and it dates back to 1835, R.S.Mo.1835, p. 251. The section reads as follows:

"Copies of *contracts entered into by individuals with the state*, or any officer thereof, or with any county, or with any person for the benefit of any county, under or by authority of any law, or the lawful order of any court, the originals of which are, by law or the lawful order of any court, in the custody and keeping of any officer, duly certified and attested by the official seal of such officer, or, if such officer have no official seal, then verified by the affidavit of such officer, *may be sued upon,* and shall be received in evidence, to all intents and purposes, as the originals themselves." (Emphasis added.)

Defendant cites and relies on several Missouri cases as authority, by analogy, that plaintiff may not maintain this action. We examine them briefly. One is the case of State ex rel. Eagleton v. Hall, Mo., 389 S.W.2d 798. In that case involving a will contest suit the court made absolute a writ of prohibition because the State was a necessary party to the suit and had never been served and the action could not continue without its joinder. In the opinion the court recognized the existence of the doctrine of sovereign immunity in Missouri. Kleban v. Morris, 363 Mo. 7, 247 S.W.2d 832, involved a suit to recover use tax collected under an unconstitutional statute, and the court held the suit could not be maintained because there was no statute authorizing the suit. Zoll v. St. Louis County, 343 Mo. 1031, 124 S.W.2d 1168, held that a county could not be sued for damages on the basis that it changed the grade of a public highway. In Nacy v. Le Page, 341 Mo. 1039, 111 S.W.2d 25, the court ruled that the State Treasurer was not subject to a garnishment writ. State ex rel. State High-

way Commission of Missouri v. Bates, Mo., 296 S.W. 418, recognized the doctrine of sovereign immunity but held that the State Highway Commission was liable to suit on its contract because the General Assembly had consented by statute to suits against the Highway Department. None of these cases involved instances wherein the General Assembly had authorized the execution of a contract on behalf of the State and the question presented was whether such authorization amounted to a waiver of sovereign immunity and consent to suit for enforcement of the contract, if necessary. None of the cited cases rule the present situation.

The State's brief sets out an exhaustive list of statutory references in which the General Assembly has provided that various state agencies and other governmental bodies or public entities may sue or be sued. Examples therefrom are that the State Highway Commission "may sue and be sued in its official name" (§ 226.100, V.A.M.S.), and the Public Service Commission "may sue and be sued in its official name" (§ 386.120(4), V.A.M.S.). The State asserts that the General Assembly has intended to waive sovereign immunity only in those instances such as the above, where, by statute, it has expressly provided that the State or local governmental agency is subject to suit. Not so. The statutes referred to are general enabling acts, conferring broad authority for those agencies to sue and be sued. They provide a continuing waiver of sovereign immunity as to those agencies, but they do not imply an intention on the part of the General Assembly to withhold such waiver in cases wherein it had authorized and provided the funds for a particular contract. In the *latter* situation the waiver is implied rather than express because the nature of the transaction authorized necessarily contemplates mutual and reciprocal obligations on the part of the citizen and the State, all of which the General Assembly reasonably intends and expects to be fulfilled. Obviously, the implied waiver is limited to

matters relating to the specific contract authorized.

■ The State next urges that there is no money available to satisfy any judgment awarded plaintiff, asserting that the unexpended portion of the last appropriation for this building expired December 31, 1970. Consequently, says the State, any judgment will be unenforceable and suit should not be maintainable for that reason. One case cited in support of that position is University of Maryland v. Maas, 173 Md. 554, 197 A. 123.

The foregoing argument necessarily says, in effect, that there is no way by court action to adjudicate rights under a contract such as the one here involved. Usually—perhaps always—an appropriation and authorization will have lapsed before a breach occurs and litigation can take place and be consummated. The General Assembly appropriates on a one-year basis, and while there may be and are reappropriations, the experience in this instance discloses that the last date of authorization will expire before alleged contract rights can be adjudicated.

The Supreme Court of New Jersey dealt with this kind of question in P, T & L Construction Co. v. Commissioner, Department of Transportation, 55 N.J. 341, 262 A.2d 195, 198, when it said:

"Plaintiff suggests that since it seeks no more than the balance of a contract which was duly authorized, we may assume funds are on hand which could be ordered to be applied in payment. Whether appropriated moneys are still on hand, we do not know, *but we think it is time to settle the larger question whether the courts should be open to a person who holds a contract with the State even though satisfaction of a favorable judgment would depend wholly upon the willingness of the Legislature to accept the judgment and provide for payment.*

"If our coordinate branches made it plain that they would be indifferent to our judgments in such matters, we would indeed be loath to be party to the spectacle such as conflict of wills would create. But there is no reason to suppose that our efforts will be ignored. * * *" (Emphasis supplied.)

Courts usually do not examine the pocketbook of the defendant to determine whether a suit may be maintained. If a cause of action is stated and all necessary prerequisites to maintenance of such suit exist, the case is heard. Only if and when a judgment is rendered is attention given as to whether the judgment is collectible. The same should be true here. If, as we find, the State impliedly has consented to waive its sovereign immunity and to be sued on this contract, the plaintiff should be entitled to proceed with his suit and secure an adjudication thereof. The matter of collectibility will come later.

We have no reason to believe that the General Assembly would not recognize as an obligation of the State any judgment finally rendered as a result of such litigation. On the contrary, we have every reason to believe that it would recognize and appropriate for such obligation. This procedure does not violate the separation of powers provided for in the Constitution. It is appropriate for the judicial branch to adjudicate whether the State is obligated as a result of a contract dispute. It remains for the General Assembly to appropriate the money if it be determined that the State is so obligated.

This is a period when much is being said by members of the public as to the need for government to be responsive and responsible. The very antithesis of responsibility by government would be to say that it may contract with a citizen and assume obligations under the contract and then be permitted to disavow and say to the citizen that the State has breached the contract but you can't do anything about it because the government has not expressly consented to the maintenance of the suit. We

have every confidence that the General Assembly did not so intend.

Reversed and remanded.

BARDGETT, Acting P. J., and SEILER, J., concur.

HOLMAN, P. J., not sitting.