184 WINDSOR AVENUE, LLC *v.*
STATE OF CONNECTICUT
(SC 17243)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued February 15—officially released July 5, 2005

*Richard P. Weinstein*, with whom, on the brief, was *Nathan A. Schatz*, for the appellant (plaintiff).

*Thomas J. Davis, Jr.*, assistant attorney general, with whom were *Maite Barainca*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

NORCOTT, J. The plaintiff, 184 Windsor Avenue, LLC, brought this action for damages and declaratory relief against the defendant, the state of Connecticut, alleging that the state's failure to pay rent due under the tax escalation clause of a lease agreement between the parties constituted a breach of contract and an uncompensated taking in violation of the federal and state constitutions.[1] The trial court dismissed the action, concluding that it lacked subject matter jurisdiction because the plaintiff's action was barred by sovereign immunity. On appeal,[2] the plaintiff contends that the state: (1) impliedly waived its sovereign immunity when it voluntarily entered into the lease agreement; and (2) is not protected by the doctrine of sovereign immunity from the takings claim. We affirm the judgment of the trial court.

The record and the complaint[3] reveal the following undisputed facts and procedural history. The plaintiff's

[1] Article first, § 11, of the constitution of Connecticut provides: "The property of no person shall be taken for public use, without just compensation therefor."

The fifth amendment to the United States constitution provides in relevant part: "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The fifth amendment's public use clause has been made applicable to the states through the fourteenth amendment to the United States constitution. See, e.g., *Hawaii Housing Authority* v. *Midkiff*, 467 U.S. 229, 231, 104 S. Ct. 2321, 81 L. Ed. 2d 186 (1984).

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we subsequently granted the plaintiff's motion and transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[3] "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a

predecessor entered into two leases with the state on or about May 20, 1998, for the administrative and industrial use of two suites by the state board of education and services for the blind (education board). Negotiations for the leases had begun in 1997, and lease proposal outlines were drafted by an assistant attorney general and signed by the plaintiff by the end of that year. These lease proposals also were signed by the commissioner of the department of public works and approved by the chairman of the state properties review board (review board) on April 6, 1998. At that time, both leases contained a provision indicating that the state would pay, as additional rent, increases in real estate property taxes for the duration of the lease agreements (tax escalation clause), using October 1, 1998, as the base date from which increases would be calculated.

On May 8, 1998, the plaintiff requested that the base date be amended to October 1, 1997, in order to account for improvements that it had made to the property for the benefit of the education board during this period. The state offered to move the base date back even farther to October 1, 1996, which is the date that currently appears in the lease. On or about May 20, 1998, the state's representative signed the amended lease agreements. The state has, however, refused to pay the additional sums it allegedly owes under the tax escalation clauses, and has expressed an unwillingness to make such payments in the future. The education board nevertheless continues to occupy the plaintiff's premises.

After failing to collect the additional rent allegedly owed by the state, the plaintiff brought the matter to the

manner most favorable to the pleader." (Internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611, 793 A.2d 215 (2002).

state claims commissioner.[4] The claims commissioner held an adversarial hearing on June 18, 2002, and determined that the leases were subject to a comprehensive statutory program designed to monitor the purchase and lease of real property by the state. The claims commissioner concluded that the amended tax escalation clause is invalid pursuant to General Statutes § 4b-23 (e),[5] which provides that "[a]ll decisions made by the commissioner [of public works] . . . shall require review by the [review] board," because it never was submitted to the review board for approval. Accordingly, the claims commissioner denied the plaintiff's

[4] "The procedure for claims that must proceed through the claims commissioner is well delineated. The commissioner has jurisdiction, pursuant to General Statutes § 4-158 (a), to 'approve immediate payment of just claims not exceeding seven thousand five hundred dollars.' Any person who has brought a claim for more than $7500 may waive immediate payment and the claims commissioner, pursuant to General Statutes § 4-159, shall submit the claim to the General Assembly with 'recommendations . . . for the payment or rejection of amounts exceeding seven thousand five hundred dollars.' In addition to granting direct monetary relief, the claims commissioner may 'authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable.' General Statutes § 4-160 (a)." *Miller* v. *Egan*, 265 Conn. 301, 319–20, 828 A.2d 549 (2003).

[5] General Statutes § 4b-23 (e) provides in relevant part: "Implementation of the state facility plan shall be the responsibility of the Commissioner of Public Works. . . . The [Properties Review] [B]oard shall meet to review the decision of the commissioner and may request the commissioner or any member of his department, and the head of the requesting agency or any of his employees to appear for the purpose of supplying pertinent information. Said board shall call a meeting within two weeks of the receipt of the commissioner's decision, and may meet as often as necessary, to review said decision. The board, within ninety days after the receipt of the decision of the Commissioner of Public Works, shall either accept, reject or request modification of such decision . . . . All decisions made by the commissioner under the provisions of this section shall require review by the board. Except as otherwise hereinafter provided, the approval or disapproval of the Properties Review Board shall be binding on the commissioner and the requesting agency with regard to the acquisition of any real estate by lease or otherwise, notwithstanding any other statute or special act to the contrary. A majority vote of the board shall be required to accept or reject a decision of the commissioner."

claim, as well as its request for permission to sue the state, and advised the plaintiff that its claim would be submitted to the General Assembly for a final determination.

The plaintiff, however, did not pursue the matter further with the General Assembly. Instead, the plaintiff brought this action against the state alleging that the state's failure to pay the moneys owed under the tax escalation clauses constituted: (1) a breach of the agreements; and (2) a taking of the plaintiff's property without just compensation. The plaintiff sought damages and a declaratory judgment stating that the tax escalation clauses are enforceable.

The trial court granted the state's subsequent motion to dismiss, primarily on the basis of sovereign immunity. The trial court concluded that: (1) the state had not waived its sovereign immunity with respect to its contract with the plaintiff; (2) the takings claims were barred because the tax escalation clauses were invalid as a matter of law; and (3) the plaintiff's claim for declaratory relief was barred because the claims commissioner had not acted unconstitutionally or in excess of his statutory authority when he found the tax escalation clauses to be invalid. The trial court further noted that the plaintiff had failed to pursue the one avenue of appeal that had been available to it, namely, review by the General Assembly. This appeal followed.

On appeal, the plaintiff contends that the trial court improperly dismissed its claims for damages because: (1) the state impliedly waived its sovereign immunity by voluntarily and knowingly entering into lease agreements with the plaintiff; (2) sovereign immunity is not a defense to claims of takings without just compensation; and (3) the validity of the tax escalation clauses should not have been decided in the context of a motion to dismiss. Additionally, the plaintiff contends

that the trial court improperly dismissed its request for declaratory relief regarding the enforceability of the tax escalation clauses because requests for declaratory relief of a prospective nature fall into an exception to sovereign immunity. In response, the state claims that the trial court properly granted its motion to dismiss because: (1) there was no legislative intent impliedly to waive the state's sovereign immunity; (2) the facts pleaded do not support a claim of taking, but merely breach of contract; (3) this court lacks subject matter jurisdiction to hear the present case pursuant to General Statutes § 4-148 (c);[6] and (4) the plaintiff's request for declaratory relief failed to involve the determination of a constitutional infringement. We agree with the state; accordingly, we affirm the judgment of the trial court.

Preliminarily, we set forth the standard of review. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003).

I

## WHETHER THE STATE IMPLIEDLY WAIVED ITS SOVEREIGN IMMUNITY BY VOLUNTARILY CONTRACTING WITH THE PLAINTIFF

We begin with the plaintiff's claim that the state impliedly waived its sovereign immunity for breach of

[6] General Statutes § 4-148 (c) provides: "No claim cognizable by the Claims Commissioner shall be presented against the state except under the provisions of this chapter. Except as provided in section 4-156, no claim once considered by the Claims Commissioner, by the General Assembly or in a judicial proceeding shall again be presented against the state in any manner."

contract when it voluntarily entered into the lease agreement with the plaintiff. As a matter of public policy, "[a] sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends. . . . We have held that a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Citations omitted; internal quotation marks omitted.) Id., 313–14.

Accordingly, "we begin with a searching examination of the language of the [relevant] statute [or statutes] . . . . We [also] recognize . . . that the purpose or purposes of the legislation, and the context . . . are directly relevant to the meaning of the language of the statute." (Internal quotation marks omitted.) Id., 328. Moreover, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

The plaintiff's first claim sounds in breach of contract. Accordingly, we look to the language of the statutes pertaining to contracts and claims against the state.

General Statutes § 4-156 provides in relevant part: "Upon the discovery of new evidence, any claimant aggrieved by an order of the Claims Commissioner rejecting or recommending the rejection of his claim, in whole or in part, may apply for rehearing. . . ."

General Statutes § 4-142 provides: "There shall be a Claims Commissioner who shall hear and determine all claims against the state except: (1) Claims for the periodic payment of disability, pension, retirement or other employment benefits; (2) claims upon which suit otherwise is authorized by law including suits to recover similar relief arising from the same set of facts; (3) claims for which an administrative hearing procedure otherwise is established by law; (4) requests by political subdivisions of the state for the payment of grants in lieu of taxes; and (5) claims for the refund of taxes."

Pursuant to General Statutes § 4-158 (a),[7] the claims commissioner may approve immediate payment of just claims not exceeding $7500. By contrast, pursuant to General Statutes § 4-159,[8] the claims commissioner can only make *recommendations* to the General Assembly regarding payment for claims exceeding $7500, after a hearing. The General Assembly then may decide whether to accept or to reject any such recommenda-

---

[7] General Statutes § 4-158 (a) provides in relevant part: "The Claims Commissioner may approve immediate payment of just claims not exceeding seven thousand five hundred dollars. The clerk of the Office of the Claims Commissioner shall deliver to the Comptroller a certified copy of the Claims Commissioner's order and the Comptroller shall make payment . . . . Within five days after the convening of each regular session, the Claims Commissioner shall report to the General Assembly on all claims decided pursuant to this section."

[8] General Statutes § 4-159 provides in relevant part: "After hearing, the Claims Commissioner shall make his recommendations to the General Assembly for the payment or rejection of amounts exceeding seven thousand five hundred dollars. Within five days after the convening of each regular session . . . the Claims Commissioner shall submit such recommendations to the General Assembly, together with a copy of his findings and of the hearing record of each claim so reported. The General Assembly may (1) accept or alter any such recommendation or (2) reject any such recommendation and grant or deny the claimant permission to sue the state. The General Assembly may grant the claimant permission to sue the state under the provisions of this section when the General Assembly deems it just and equitable and believes the claim to present an issue of law or fact under which the state, were it a private person, could be liable."

tion and whether to grant the claimant permission to sue the state where it "deems it just and equitable and believes the claim to present an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-159. Finally, General Statutes § 4-61 (a)[9] provides in relevant part that "[a]ny person, firm or corporation which has entered into a contract with the state . . . for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state *may* . . . bring an action against the state to the superior court for the judicial district of Hartford . . . [wherein] [a]ll legal defenses except governmental immunity shall be reserved to the state. . . ." (Emphasis added.) This is the *sole* Connecticut statute that expressly waives sovereign immunity for specifically enumerated contract actions.

The language of the relevant statutes does not provide or imply any waiver of sovereign immunity with respect to the lease agreements between the plaintiff and the

---

[9] General Statutes § 4-61 (a) provides in relevant part: "Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Public Works, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined, provided notice of each such claim under such contract and the factual bases for each such claim shall have been given in writing to the agency head of the department administering the contract within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor or two years after the termination of the contract, whichever is earlier. . . . Such action shall be tried to the court without a jury. All legal defenses except governmental immunity shall be reserved to the state. . . ."

state. Section 4-142 requires that the claims commissioner determine claims against the state, and enumerates specific categories of claims that are exempt from the claims process. The only applicable exemption under that statute would be § 4-142 (2), which applies to "claims upon which suit otherwise is authorized by law including suits to recover similar relief arising from the same set of facts . . . ." Our review of the statutory scheme reveals that the only statute providing for a waiver of sovereign immunity with respect to contracts is § 4-61, which expressly waives immunity from suit with respect to specifically enumerated public works contracts. See General Statutes § 4-61 (a) (waiving immunity with respect to contracts "for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state," and stating that "[a]ll legal defenses except governmental immunity shall be reserved to the state"); see also footnote 9 of this opinion.

It is well settled that statutory waivers of sovereign immunity are to be strictly construed. See, e.g., *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 293–94, 869 A.2d 1193 (2005) ("[t]he scope of any statutory waiver 'must be confined strictly to the extent the statute provides' "). Accordingly, we cannot construe § 4-61 beyond its express public works exceptions because to do so would render them superfluous, as well as violate the maxim that the legislature's inclusion solely of public works contracts necessarily implies the exclusion of other contracts, including the plaintiff's lease with the state. See, e.g., *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 295, 819 A.2d 260 (2003) (discussing " 'expressio unius est exclusio alterius' "). Thus, in the absence of a statutory waiver of sovereign immunity, the plaintiff may not bring suit against the state for claims arising out of the

lease without authorization from the claims commissioner to do so. See General Statutes § 4-160 (a) ("[w]hen the Claims Commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable").

The plaintiff further contends that, notwithstanding the statutory scheme, public policy supports a waiver of sovereign immunity for contract claims because such immunity undermines basic principles of contract law by fostering illusory contracts. In support of its policy argument, the plaintiff identifies states that, as a matter of common law, have recognized a waiver of sovereign immunity for state contract actions. We disagree with the plaintiff because this court previously has considered and rejected the notion that contracts with the state are illusory for lack of a judicial forum in which to enforce rights. In *State* v. *Lex Associates*, 248 Conn. 612, 619, 730 A.2d 38 (1999), this court concluded that "the alleged inadequacy of one . . . remedy neither deprives a contract of mutuality of obligation nor establishes inadequacy of consideration." Furthermore, our legislature has created an alternative mechanism for reviewing breach of contract claims so as to ensure due process and "we know of [no authority] standing for the proposition that recourse to the claims commissioner is an inadequate remedy as a matter of law." Id. As undesirable as the plaintiff may find this statutory scheme, it nevertheless is the expression of a policy decision committed to the legislature. Thus, "[w]e must resist the temptation which this case affords to enhance our own constitutional authority by trespassing upon an area clearly reserved as the prerogative of a coordinate branch of government." (Internal quotation marks omitted.) *Nielsen* v. *State*, 236 Conn. 1, 10, 670 A.2d 1288 (1996). Accordingly, in light of Connecticut's express

statutory scheme, we conclude that the trial court properly granted the state's motion to dismiss with regard to the plaintiff's contract claim.[10]

We do, however, recognize, as the plaintiff points out, that other states have taken varied approaches to this issue. Some states have waived sovereign immunity for contract claims by: (1) judicial decision; see, e.g., *Grant Construction Co.* v. *Burns*, 92 Idaho 408, 413, 443 P.2d 1005 (1968) ("where . . . the state has entered into a contract pursuant to legislative authorization, the state has consented to be sued for alleged breaches of its contractual responsibilities and cannot invoke the protection of sovereign immunity");[11] (2) statutory

---

[10] Additionally, we note that the plaintiff failed to seek rejection of the claims commissioner's recommendation from the General Assembly, despite its ability to do so.

[11] See also *State Highway Dept.* v. *Milton Construction Co.*, 586 So. 2d 872, 875 (Ala. 1991) ("lawsuit is not barred by the doctrine of sovereign immunity, because it is in the nature of an action to compel state officers to perform their legal duties . . . for services contracted for and rendered"); *Souza & McCue Construction Co.* v. *Superior Court*, 57 Cal. 2d 508, 510, 370 P.2d 338, 20 Cal. Rptr. 634 (1962) ("[w]hen the state makes a contract with an individual it is liable for a breach of its agreement in like manner as an individual, and the doctrine of governmental immunity does not apply"); *Evans* v. *Board of County Commissioners*, 174 Colo. 97, 105, 482 P.2d 968 (1971) ("[t]he effect of this opinion . . . is simply to undo what this court has done and leave the situation . . . in the hands of the General Assembly"; immunity laws were subsequently enacted for torts but not contracts); *George & Lynch, Inc.* v. *State*, 57 Del. 158, 163, 197 A.2d 734 (1964) ("a party contracting with an agency of the [s]tate authorized by law to enter into contracts has all the remedies under the contract which any private citizen has against another private citizen, including the right to sue for the breach thereof"); *Kersten Co.* v. *Dept. of Social Services*, 207 N.W.2d 117, 120 (Iowa 1973) ("[w]e agree with those courts which say the [s]tate, by entering into a contract, agrees to be answerable for its breach and waives its immunity from suit to that extent"); *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 793, 494 N.E.2d 374 (1986) ("[s]tate consents to jurisdiction by voluntarily entering into a contract"); *V. S. DiCarlo Construction Co.* v. *State*, 485 S.W.2d 52, 54 (Mo. 1972) ("when the [s]tate enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses and binds itself to performance, just as any private citizen would do by so contracting"); *Todd* v. *Board of Educational Lands & Funds*, 154 Neb. 606, 610, 48 N.W.2d 706 (1951) ("[state], by

enactment; see, e.g., Ind. Code Ann. § 34-13-1-1 (a) (Michie 2004) ("[a]ny person having a claim against the state arising out of an express or implied contract may bring suit within ten [10] years after accrual of the claim");[12] and (3) state constitutional provision. See, e.g., La. Const., art. XII, § 10 (A) ("[n]either the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property").[13] On the other hand, there are several states that very strictly abide by sovereign immunity and refuse to recognize *any* waiver, even for contract claims. See Ark. Const., art. V, § 20 ("[t]he State of Arkansas shall never be made defendant in any of her

entering into a contract, abandons its attributes of sovereignty"); *P, T & L Construction Co.* v. *Commissioner, Dept. of Transportation*, 55 N.J. 341, 346, 262 A.2d 195 (1970) ("a [s]tate may be sued in its own courts on contracts it authorized"); *Smith* v. *State*, 289 N.C. 303, 320, 222 S.E.2d 412 (1976) ("whenever the [s]tate of North Carolina, through its authorized officers and agencies, enters into a valid contract, the [s]tate implicitly consents to be sued for damages on the contract in the event it breaches"); *Wiecking* v. *Allied Medical Supply Corp.*, 239 Va. 548, 553, 391 S.E.2d 258 (1990) ("doctrine of sovereign immunity has no application in actions based upon valid contracts entered into by duly authorized agents of the government").

[12] See also Alaska Stat. § 09.50.250 (Michie 2004) ("[a] person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state"); N.D. Cent. Code § 32-12-02 (2005) ("[a]n action respecting the title to property, or arising upon contract, may be brought in the district court against the state the same as against a private person"); N.H. Rev. Stat. Ann. § 491:8 (2004) ("[t]he superior court shall have jurisdiction to enter judgment against the state of New Hampshire founded upon any express or implied contract with the state"); Utah Code Ann. § 63-30d-301 (1) (a) (2005) ("[i]mmunity from suit of each governmental entity is waived as to any contractual obligation"); Wash. Rev. Code § 4.92.010 (2004) ("[a]ny person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court").

[13] See also Ga. Const., art. I, § II, para. IX (c) ("[t]he state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies"); Illinois Const., art. XIII, § 4 ("[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished").

courts");[14] see also *Drake* v. *Smith*, 390 A.2d 541, 543 n.3 (Me. 1978) ("the sovereign immunity of the [s]tate of Maine extends to actions which purport to assert a liability against the [s]tate other than liability in tort").[15] Finally, there is a large subset of states that, like Connecticut, recognizes various forms and degrees of limited waiver of sovereign immunity for contract actions, both by statute; see, e.g., N.M. Stat. Ann. § 37-1-23 (Michie 2005) ("[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract");[16] and judi-

[14] We note that, pursuant to Ark. Code Ann. § 19-10-201 (Michie 2005), the state of Arkansas does have a claims commission whose sole function is the payment of all just and legal debts of the state.

[15] See also Miss. Code Ann. § 11-46-3 (2004) ("[t]he Legislature of the State of Mississippi finds . . . that the 'state' and its 'political subdivisions' . . . shall continue to be immune from suit at law or in equity on account of any . . . omission or breach of implied term or condition of any warranty or contract"); Tenn. Code Ann. §§ 9-8-307 and 20-13-102 (2004); *Unisys Corp.* v. *Budget & Control Board Division of General Services*, 346 S.C. 158, 172–73, 551 S.E.2d 263 (2001) ("The right to a jury trial does not apply to actions against the sovereign that were not recognized in 1868. . . . At the time our constitution was adopted in 1868, the [s]tate was immune from suit on a contract." [Citations omitted.]); *Catalina Development* v. *El Paso*, 121 S.W.3d 704, 705 (Tex. 2003) ("[w]hen the governmental unit contracts with a private party it waives immunity from liability, but not immunity from suit").

[16] See also D.C. Code Ann. § 2-308.01 (2004) ("[u]nless otherwise specifically provided by law of the District, the District government . . . may not raise the defense of sovereign immunity . . . in an action based upon a written procurement contract executed on behalf of the District government"); Haw. Rev. Stat. § 661-1 (2004) (district and circuit courts of the state shall have original jurisdiction for all claims against the state regarding any express or implied contract that a contracting official was authorized to make); Ky. Rev. Stat. Ann. § 45A.245 (1) (Michie 2004) ("[a]ny person, firm or corporation, having a lawfully authorized written contract with the Commonwealth at the time of or after June 21, 1974, may bring an action against the Commonwealth on the contract"); Md. Code Ann., State Govt. § 12-201 (2004) ("the State . . . may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or [one] of its units while . . . acting within the scope of the authority of the official or employee"); Mich. Comp. Laws § 600.6419 (2005) ("[t]he court [of claims] has power and jurisdiction: (a) To hear and determine all claims and demands

cial decision. See *State Board of Public Affairs* v. *Principal Funding Corp.*, 542 P.2d 503, 506 (Okla. 1975) ("[w]e hold that where a person or entity enters into a valid contract with the proper [s]tate officials and a valid appropriation has been made therefor, the [s]tate

. . . ex contractu . . . against the state"); Minn. Stat. § 3.751 (2005) ("[w]hen a controversy arises out of a contract for work, services, the delivery of goods, debt obligations of the state . . . or revenue obligations of a retirement fund . . . and no claim against the state has been made in a bill pending in the legislature for the same redress against it, the state waives immunity from suit . . . and confers jurisdiction on the district court"); Nev. Rev. Stat. 41.031 (2004) ("[t]he State of Nevada hereby waives its immunity from liability and action and hereby consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations, except as otherwise provided [by certain statutes]"); N.Y. Ct. Cl. Act, art. II, § 8 (McKinney 1989) ("[t]he state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined . . . provided the claimant complies with the limitations of this article"); Ohio Rev. Code Ann. § 2743.02 (Anderson 2005) ("[t]he state hereby waives its immunity from liability, except as provided for the office of the state fire marshal . . . and consents to be sued . . . in the court of claims . . . with the same rules of law applicable to suits between private parties"); Or. Rev. Stat. § 30.320 (2003) ("[a] suit or action may be maintained . . . against the State of Oregon . . . upon a contract made by the county in its corporate character . . . and within the scope of its authority; provided, however, that no suit or action may be maintained . . . upon a contract relating to the care and maintenance of an inmate or patient of any county or state institution"); R.I. Gen. Laws § 37-13.1-1 (2004) ("[a]ny person, firm, or corporation which is awarded a contract . . . with the state of Rhode Island . . . for the design, construction, repair, or alteration of any state highway, bridge, or public works other than those contracts which are covered by the public works arbitration act may . . . bring an action against the state of Rhode Island in the superior court"); W. Va. Code § 14-2-13 (2005) ("[t]he jurisdiction of the court [of claims] . . . shall extend to the following matters: (1) Claims and demands . . . ex contractu and ex delicto, against the State or any of its agencies, which the State as a sovereign commonwealth should in equity and good conscience discharge and pay"); Wis. Stat. § 18.13 (2) (2004) ("[i]f the state fails to pay any public debt in accordance with its terms, an action to compel such payment may be commenced against the state in accordance with § 801.02"); Wyo. Stat. Ann. § 1-39-104 (Michie 2004) ("[a]ny immunity in actions based on a contract entered into by a governmental entity is waived except to the extent provided by the contract if the contract was within the powers granted to the entity and was properly executed and except as provided in [Wyo. Stat. Ann. §] 1-39-121").

has consented to being sued and waived its governmental immunity to the extent of its contractual obligations and such contractual obligations may be enforced against the [s]tate in an ordinary action at law").[17] The merits of the various sister state approaches notwithstanding, we are bound by the current scheme. Accordingly, we will not disturb a policy decision committed solely to the discretion of the legislature.

## II

## WHETHER THE DOCTRINE OF SOVEREIGN IMMUNITY BARS THE PLAINTIFF'S TAKINGS CLAIM

We next turn to the plaintiff's contention that the trial court improperly granted the state's motion to dismiss because sovereign immunity does not bar its claim that the state's failure to pay the full amount of rent allegedly due under the lease is an unconstitutional taking of the plaintiff's property for public use without just compensation. The plaintiff's takings claim is similarly unavailing because the state's failure to pay the full amount of rent allegedly due is not, as a matter of law, a taking.

---

[17] See also *Pan-Am Tobacco Corp.* v. *Dept. of Corrections*, 471 So. 2d 4, 5 (Fla. 1984) ("where the state has entered into a[n] [express, written] contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract"); *In re Tax Protests of Midland Industries, Inc.*, 237 Kan. 867, 870, 703 P.2d 840 (1985) ("where the state is involved in a proprietary or private function, it will be held to the same responsibility as a private person for injuries resulting from failure to meet its contractual obligations"); *Peretti* v. *State*, 238 Mont. 239, 245, 777 P.2d 329 (1989) (sovereign immunity is waived for express contracts but not implied contracts); *Shovel Transfer & Storage* v. *Simpson*, 523 Pa. 235, 240, 242, 565 A.2d 1153 (1989) ("the [b]oard of [c]laims is empowered to entertain *all contractual claims* against the [c]ommonwealth irrespective of the type of relief sought or the fact that the [b]oard of [c]laims may not have the power to grant the relief requested"; [emphasis in original]; "cases can be appealed to Commonwealth Court for review and correction of any legal errors alleged by the parties").

The plaintiff correctly notes that "[t]he doctrine of sovereign immunity is not available to the state as a defense to claims for just compensation arising under article first, § 11, of the Connecticut constitution. . . . When possession has been taken from the owner, he is constitutionally entitled to any damages which he may have suffered . . . ."[18] (Citation omitted; internal quotation marks omitted.) *Tamm* v. *Burns*, 222 Conn. 280, 283, 610 A.2d 590 (1992). "To survive a motion to dismiss on the ground of sovereign immunity, [however] a complaint 'must allege sufficient facts to support a finding of a taking of land in a constitutional sense.' " Id., 284. We conclude that the plaintiff has failed to meet this burden.

It is axiomatic that government action cannot constitute a taking when the aggrieved party does not have a property right in the affected property. "Whether one's interest or entitlement rises to the level of a protected property right depends upon the extent to which one has been made secure by [s]tate or [f]ederal law in its enjoyment." *Wilmarth* v. *Georgetown*, 28 Mass. App. 697, 701, 555 N.E.2d 597 (1990). In the present case, the trial court properly concluded that the tax escalation clause was an invalid lease term because it had not been approved by the review board pursuant to § 4b-23 (e). See footnote 5 of this opinion. The facts in the complaint, even when construed broadly in a manner most favorable to the plaintiff, simply fail to support a

---

[18] Accordingly, the state's reliance on *Miller* v. *Egan*, supra, 265 Conn. 301, for the proposition that, "[a]bsent permission to sue from the claims commissioner, the [c]ourt lacks subject matter jurisdiction for any damages claim, even one alleging a constitutional taking" is misplaced. *Miller* does not overrule *Tamm* v. *Burns*, 222 Conn. 280, 610 A.2d 590 (1992). Its central holding with respect to the issue of the exception to sovereign immunity is only that, "when a process of statutory interpretation establishes that the state officials acted beyond their authority, sovereign immunity does not bar an action seeking declaratory or injunctive relief." *Miller* v. *Egan*, supra, 327. The state's interpretation of *Miller* is, therefore, overly expansive.

finding that the tax escalation clause was valid as a matter of law.[19] The complaint mentions nothing about review board approval, which is a necessary component of a valid contract at law pursuant to § 4b-23 (e). See footnote 5 of this opinion. The plaintiff, therefore, does not have an enforceable property interest in the income that would be generated by the tax escalation clause.[20] Accordingly, the claim was properly dismissed by the trial court.[21]

---

[19] Paragraph seven of the complaint provides: "The State of Connecticut entered into said leases knowingly, as said leases had been prepared and approved by an Assistant Attorney General of the State of Connecticut, and knew that plaintiff was relying upon said leases to make substantial tenant improvements."

[20] Accordingly, the trial court also properly dismissed the plaintiff's request for declaratory relief "determining that the additional rent (tax) clause in the leases is enforceable . . . ." Having already determined that the plaintiff lacks a property interest in the tax escalation clauses, this court need not consider the plaintiff's request for declaratory relief any further. It is axiomatic that without a property interest in the tax escalation clauses, the plaintiff cannot enforce them. Any failure to consider the plaintiff's request on the part of the trial court is, therefore, harmless.

The plaintiff's contention that such a conclusion goes to the merits of its claim and, therefore, should not have been decided in the context of a motion to dismiss also is unpersuasive. Whether government action constitutes a taking is a question of law that, in the present case, formed the basis of the plaintiff's cause of action. A motion to dismiss, in turn, tests whether a plaintiff can "state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *State* v. *Welwood*, 258 Conn. 425, 433, 780 A.2d 924 (2001). This issue was, therefore, properly decided by the trial court in the context of a motion to dismiss.

[21] In light of our conclusion, it is unnecessary to address the state's final argument that this court lacks subject matter jurisdiction to consider the plaintiff's claims pursuant to § 4-148 (c). We note only that "the principle underlying § 4-148 (c) is that of res judicata . . . [which] [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim"; (internal quotation marks omitted) *Chotkowski* v. *State*, 240 Conn. 246, 265, 690 A.2d 368 (1997); and the concern of the legislators in enacting § 4-148 (c) was to rectify the situation of "unsatisfied claimants reappear[ing] every session with the same claims, forcing the legislature into useless repetition." Conn. Joint Standing Committee Hearings, Appropriations, Pt. 3, 1959 Sess., p. 920, remarks of George Oberst, director of the legislative council. The concern was not to prevent judicial review of legislative determinations. Accordingly, § 4-148 (c) would

The judgment is affirmed.

In this opinion the other justices concurred.

not serve as a bar to the consideration of the plaintiff's claims in the present appeal.