KAYLEE MANIFOLD ET AL. *v.* KRISTINE D. RAGAGLIA, COMMISSIONER OF CHILDREN AND FAMILIES, ET AL.
(AC 25811)

Lavery, C. J., and Harper and Foti, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued September 21, 2005—officially released February 28, 2006

*Carolyn A. Signorelli*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Maite Barainca*, assistant attorney general, for the appellants (named defendant et al.).

*Thomas C. Simones*, with whom, on the brief, were *Timothy A. Bishop* and *Stephen Burnham*, law student intern, for the appellees (plaintiffs).

*Opinion*

HARPER, J. The defendants, Kristine D. Ragaglia, the commissioner of the department of children and families (commissioner), and Richard Days, Nancy Liebenson-Davis, Antonio Donis and Daphne Knight, all employees of the department of children and families (department), appeal from the judgment of the trial court denying their motion for summary judgment.[1] The defendants claim that the court improperly denied sum-

---

[1] The commissioner and the department employees are the only defendants remaining in this action. The complaint originally included claims for negligence, medical malpractice and negligent infliction of emotional distress against Robert Creutz, a physician, and William H. Backus Hospital, his employer, but those claims were dismissed earlier in the proceedings. See *Manifold* v. *Ragaglia*, 272 Conn. 410, 862 A.2d 292 (2004) (affirming trial court judgment granting motion for summary judgment filed by Creutz and William H. Backus Hospital). References to the defendants in this opinion are to the defendants from the department.

mary judgment because (1) the court applied the standard for a motion to dismiss, rather than the standard for summary judgment, to the defendants' claim that the court lacked subject matter jurisdiction and (2) no genuine issue of material fact existed as to whether the defendants intended to inflict emotional distress or whether their conduct was extreme and outrageous so as to support a claim of intentional infliction of emotional distress. We agree with the defendants' first claim and, accordingly, reverse the judgment of the trial court and remand the case with direction to treat the defendants' motion as a motion for summary judgment. We decline to address the defendants' second claim because the defendants have failed to provide us with an adequate record.

Our Supreme Court set forth the facts relevant to the disposition of the defendants' appeal in *Manifold* v. *Ragaglia*, 272 Conn. 410, 862 A.2d 292 (2004). "On April 21, 2001, an anonymous caller from the office of the plaintiffs'[2] pediatrician at the Norwich Pediatric Group contacted the department to report that Kathleen Welch, a speech therapist with the Birth to Three Program, had noticed numerous bruises on both Matthew [Manifold] and Kaylee [Manifold], and a rash on Matthew [Manifold] while she was conducting a home based therapy session. In particular, Welch noticed that both children had bruises in the same location on their foreheads. [The children] were two and three years old, respectively, at this time.

"On April 24, 2001 . . . Days, a department social worker, made an unannounced visit to the plaintiffs' home. Days informed [the children's parents, Michael Manifold and Billie Jo Zaks] of the reason for the visit, and they consented to his examining the children. He

---

[2] The plaintiffs in this action are the minor children, Kaylee Manifold and Matthew Manifold, and their parents, Billie Jo Zaks and Michael Manifold.

noted that both children were dirty and had bruised foreheads, while Matthew [Manifold] also had extensive bruising on his entire back and a rash on the front and back of his torso. Upon questioning by Days, [Michael] Manifold explained that he had not taken Matthew [Manifold] to the pediatrician because he thought the rash was from Matthew [Manifold's] recently having eaten $50 worth of chocolate. [Michael] Manifold explained to Days that his son bruised easily, and that he had sustained the bruises while roughhousing with his sister and playing with his new toy trucks and the family dog. Later that day, Days accompanied the plaintiffs to the office of their family pediatrician at the Norwich Pediatric Group.

"Upon their arrival, Days asked whether Richard Geller, the family's regular pediatrician, could examine the children to determine whether there was reasonable cause to suspect that they had been abused. Geller stated that he was unable to examine the children at that time and that they should not have been brought to his office; he advised Days to take the children to the emergency room at [William H. Backus Hospital (Backus)] if an immediate examination was needed. Days then made an appointment with Geller for the following morning, but transported the plaintiffs to the . . . Backus emergency room for a more immediate evaluation.

"At . . . Backus, [physician Robert] Creutz examined both children, and ordered an X ray of Matthew [Manifold]. The X ray revealed no fractures, but Creutz stated in the notes of his examination that Matthew [Manifold] had a rash and bruises on his head and chest, as well as three large bruises on his back. The report also noted that Matthew [Manifold] had bruises on his legs, knees, thighs and both buttocks. The parents told Creutz that the bruises were the result of roughhousing with the dog and his sister, as well as a fall. Both parents

denied causing the injuries, and told Creutz that no one ever had struck Matthew [Manifold], except for 'pats on the bottom.' On the basis of the number and size of the bruises, Creutz concluded, however, that the bruises were typical of inflicted, rather than accidental, injuries, and he recommended further investigation of the injuries' source. He testified at his deposition that he did not order any blood tests to determine whether a blood disorder contributed to the bruising because the physical findings alone raised a sufficiently high suspicion of child abuse to require that it be ruled out, even if the blood test result was positive.

"Creutz explained the results of the examination to Days, who in turn discussed them with other department personnel. Shortly thereafter, Jorge Osorio, a department supervisor, authorized a ninety-six hour hold of the children pursuant to General Statutes § 17a-101g (d). The children then were taken into department custody with the assistance of local police, and were placed in a licensed foster home. The department subsequently applied for and obtained orders of temporary custody of the children from the Superior Court for Juvenile Matters, *Driscoll, J.*, on April 25, 2001.

"On April 25, 2001, Days met the children and the foster mother at the office of the Norwich Pediatric Group. At that time, Nancy Cusmano, a pediatrician, examined both children. Cusmano ordered blood tests for Matthew [Manifold], stating that a normal blood test would indicate a high probability of abuse. Upon receiving the results of the test, however, Cusmano informed Days that Matthew [Manifold's] blood test showed some abnormalities, including a very low blood platelet count that generally causes clotting difficulties. She said that this condition could explain both the bruising and the rash. . . . Cusmano referred Matthew [Manifold] to Joseph McNamara, a hematologist at Yale-New Haven Hospital (Yale), for further evaluation.

Thereafter, McNamara diagnosed Matthew [Manifold] with idiopathic thrombocytopenic purpura, a blood disorder, and admitted him to Yale for treatment. The following day, April 26, 2001, McNamara advised Days that the marks and bruising were consistent with the blood disorder. Matthew [Manifold] subsequently was discharged from Yale. In light of this new information, the court granted the department's motion to vacate the orders of temporary custody. The department returned the children to the parents' custody later that same day, and Days relayed the Yale discharge instructions to them.

"The neglect petitions that were filed with the court on April 25, 2001, however, remained active, although the department amended them to remove the initial allegations of physical abuse. The case was transferred to the department's division of protective services for further monitoring and study. A social study subsequently was filed with the court, and the neglect petitions were withdrawn in October, 2001." *Manifold* v. *Ragaglia*, supra, 272 Conn. 413–16.

The plaintiffs instituted this action against the defendants in April, 2002. They brought claims alleging both intentional and negligent infliction of emotional distress.[3] Although the defendants appear to claim in their brief that the plaintiffs' negligent infliction of emotional distress claim has been eliminated,[4] we find no support

---

[3] See footnote 1.

[4] The defendants note in their brief that "[c]ount four is titled 'negligent infliction of emotional distress,' but the trial court found [that] its allegations were sufficient to support a finding of wanton, malicious or reckless conduct." They seem to imply that the court's conclusion that the plaintiffs' allegations *could* support a finding of wanton, malicious or reckless conduct effectively eliminated the claim for negligent infliction of emotional distress. The court's decision, however, did not limit the plaintiffs' action to an intentional infliction of emotional distress claim. Rather, the court merely concluded that neither sovereign immunity, nor statutory immunity, protected the defendants from liability for their actions. Consequently, the plaintiffs' intentional and negligent infliction of emotional distress claims both survived the defendants' motion for summary judgment.

for their contention in the record. The claims for intentional and negligent infliction of emotional distress both remain the basis of the plaintiffs' action.

The defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction, claiming that they were protected by common-law sovereign immunity for actions in their official capacities and by statutory immunity, pursuant to General Statutes § 4-165, for actions in their individual capacities.[5] The court, *Martin, J.*, denied the defendants' motion, concluding that the facts, as alleged in the complaint, could demonstrate that the defendants acted beyond the scope of their authority, which would prevent them from being protected by sovereign immunity in their official capacities. The court also determined that the facts, as alleged in the complaint, could support a finding that the defendants acted "wantonly, recklessly or maliciously," which would expose them to liability in their individual capacities under § 4-165.

The defendants then filed a motion to reconsider the motion to dismiss in light of our Supreme Court's decisions in *Miller* v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003), and *Prigge* v. *Ragaglia*, 265 Conn. 338, 828 A.2d 542 (2003). Relying on those decisions, the court granted the motion to dismiss with respect to the claims against the defendants in their official capacities that sought monetary damages. The court, however, again denied the defendants' motion to dismiss the remaining claims, which sought declaratory relief and an injunction against the defendants for actions in their official capacities and monetary relief for actions in their individual capacities.

---

[5] General Statutes § 4-165 provides in relevant part that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . ."

The defendants subsequently filed a motion for summary judgment, with which they submitted affidavits, deposition transcripts and other documentary evidence. The plaintiffs filed an opposition to the defendants' motion for summary judgment, incorporating by reference the evidence that they previously had submitted with their opposition to the defendants' motion to dismiss. The plaintiffs did not submit any additional evidence with their opposition to the defendants' motion for summary judgment. The court denied the motion for summary judgment, stating that because the defendants sought summary judgment on the ground that the court lacked subject matter jurisdiction to hear the case, the motion would be treated as a motion to dismiss. Accordingly, the court applied the standard for a motion to dismiss and reached the same conclusion that it had in its earlier decisions. In applying that standard, the court reiterated that "[t]he allegations, if proven, could lead a fact finder to believe that the defendants acted in excess of the scope of government authority granted to them. In addition, the same facts that lead to a conclusion that the defendants may have acted in excess of their authority could lead a fact finder to conclude that the defendants acted wantonly, recklessly or maliciously as the terms are used in § 4-165." Consequently, the court denied the motion for summary judgment. This appeal followed.

I

As a preliminary matter, we must address the issue of whether the denial of the defendants' motion for summary judgment is a final judgment from which they immediately may appeal. The plaintiffs claim that the court's decision is an interlocutory order that may not be immediately appealed. We disagree.

Our Supreme Court recently held that the denial of a motion for summary judgment that is based on a

colorable claim of absolute immunity is a final judgment for purposes of appeal because absolute immunity protects the individuals involved in judicial and quasi-judicial proceedings from ultimate liability, as well as from suit. *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 784–86, 865 A.2d 1163 (2005). The rationale supporting that decision is equally applicable to the denial of a motion for summary judgment that is based on a colorable claim of sovereign immunity. See *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000) (holding that denial of motion to dismiss that is based on colorable claim of sovereign immunity is final judgment), overruled in part on other grounds, *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). Accordingly, we conclude that the court's denial of the defendants' motion for summary judgment, which asserted that they are protected by sovereign immunity, is a final judgment for purposes of appeal and is, therefore, immediately appealable.

As with sovereign immunity, § 4-165 provides state officers and employees with qualified immunity. *Carrubba* v. *Moskowitz*, 274 Conn. 533, 541 n.7, 877 A.2d 773 (2005). "Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. . . . That type of immunity involves immunity from suit and is intended to permit courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." (Citation omitted; internal quotation marks omitted.) *Carrubba* v. *Moskowitz*, 81 Conn. App. 382, 395–96, 840 A.2d 557 (2004), aff'd, 274 Conn. 533, 877 A.2d 773 (2005).

Because the statutory immunity established by § 4-165 provides state employees protection from liability, as well as suit, we conclude that the same principles discussed in *Chadha* apply to the denial of a motion for summary judgment that is based on a colorable claim of statutory immunity pursuant to § 4-165. Thus, the court's denial of the defendants' motion for summary judgment, insofar as it related to the defendants' claim that statutory immunity protects them from liability for actions in their individual capacities, is an immediately appealable final judgment.

## II

The defendants first claim that the court improperly treated their motion for summary judgment as a motion to dismiss. The defendants argue that the court should have considered the factual submissions that accompanied the motion for summary judgment, rather than relying solely on the pleadings. They claim that the factual submissions demonstrated that there was no genuine issue of material fact as to whether they are protected by common-law sovereign immunity or statutory immunity, and as such, they were entitled to judgment as a matter of law.[6] We agree with the defendants that the court improperly treated their motion for summary judgment as a motion to dismiss.

We begin by setting forth the applicable standard of review. Claims involving the doctrines of common-law

---

[6] The court denied the defendants' motion for summary judgment with respect to their claims that (1) they were protected from liability for actions in their official capacities by sovereign immunity and (2) they were protected from liability for actions in their individual capacities by statutory immunity pursuant to General Statutes § 4-165. Sovereign immunity and statutory immunity both implicate the court's subject matter jurisdiction. *184 Windsor Avenue, LLC* v. *State*, 274 Conn. 302, 308, 875 A.2d 498 (2005); *Martin* v. *Brady*, 261 Conn. 372, 376, 802 A.2d 814 (2002). Accordingly, we discuss the defendants' procedural challenges to the court's decision on each of those claims simultaneously.

sovereign immunity and statutory immunity, pursuant to § 4-165, implicate the court's subject matter jurisdiction. See *184 Windsor Avenue, LLC* v. *State*, 274 Conn. 302, 308, 875 A.2d 498 (2005); *Martin* v. *Brady*, 261 Conn. 372, 376, 802 A.2d 814 (2002). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *184 Windsor Avenue, LLC* v. *State*, supra, 308.

In order to understand the defendants' procedural challenges on appeal, it is necessary to explain briefly the substantive basis for the defendants' motion for summary judgment. The defendants claimed that they are protected by sovereign immunity for actions performed in their official capacities and by the statutory immunity provided by § 4-165 for actions performed in their individual capacities. In *Shay* v. *Rossi*, supra, 253 Conn. 162–63, our Supreme Court discussed the relationship between those two doctrines. The court noted that "where a state official is sued in both her official and individual capacities, if sovereign immunity does not apply to the claim against her in her official capacity . . . statutory immunity may then apply to the claim against her in her individual capacity." Id., 162.

With respect to sovereign immunity, our Supreme Court has stated: "[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, supra, 265 Conn. 313. "The doctrine of sovereign immu-

nity protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable. *Shay* v. *Rossi*, [supra, 253 Conn. 165]." (Internal quotation marks omitted.) *Tuchman* v. *State*, 89 Conn. App. 745, 751, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005). Nonetheless, our Supreme Court has recognized several limited exceptions to the state's immunity from suit, namely, when "(1) the legislature . . . statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Citation omitted.) *Miller* v. *Egan*, supra, 313. If the plaintiff is unable to establish the applicability of one of those exceptions, however, the doctrine of sovereign immunity protects the state from ultimate liability, as well as from having to litigate the claim. *Shay* v. *Rossi*, supra, 165.

The defendants claimed that if they were not protected by sovereign immunity, statutory immunity may apply to protect them from personal liability. Section § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . ." This court has noted that "[i]n order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must provide, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving

an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Tuchman* v. *State*, supra, 89 Conn. App. 764.

With those principles in mind, we now turn to the defendants' procedural claims that are at issue. In general, a "motion to dismiss is the appropriate procedural vehicle to raise a claim that sovereign immunity [or statutory immunity] bars the action." *Sagamore Group, Inc.* v. *Commissioner of Transportation*, 29 Conn. App. 292, 298, 614 A.2d 1255 (1992); see also *Plante* v. *State*, 82 Conn. App. 459, 462, 844 A.2d 934 (2004). Practice Book § 10-31 (a) provides in relevant part: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . . . This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." The use of the motion to dismiss is ordinarily limited by Practice Book §§ 10-6, 10-7, 10-30 and 10-32, which together require that a motion to dismiss be the first pleading filed in response to the complaint and that it be filed within thirty days of the filing of an appearance. If the motion to dismiss is not filed according to those requirements, then any challenges on the grounds of lack of jurisdiction over the person, improper venue, insufficiency of process or insufficiency of service of process are deemed waived. See Practice Book §§ 10-7 and 10-32.

Unlike the requirements that apply to those other grounds for a motion to dismiss, however, a claim that the court lacks jurisdiction over the subject matter cannot be waived and must be addressed whenever it is brought to the court's attention. Practice Book § 10-33; see also *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court

lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 52, 794 A.2d 498 (2002). Accordingly, "[t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005).

Although subject matter jurisdiction may be challenged at any stage of the proceedings, it has been addressed almost exclusively through a motion to dismiss. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, 274 Conn. 262, 267, 875 A.2d 459 (2005).[7]

In this case, the defendants filed a motion to dismiss in 2003, challenging the court's subject matter jurisdic-

[7] Although the court's consideration of a motion to dismiss is generally limited to the allegations in the complaint, "[w]hen issues of fact are necessary to the determination of a court's jurisdiction . . . due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 92, 861 A.2d 1160 (2004). The court did not hold such a hearing in this case.

tion.[8] The plaintiffs subsequently filed an objection.[9] The court denied the motion, concluding that "the plaintiffs' allegations, read broadly in the plaintiffs' favor, could lead a fact finder to conclude that the defendants were acting beyond the scope of their authority." The court similarly concluded that "the same facts and allegations that led [to the conclusion that] the defendants' conduct was in excess of their statutory authority, lead[s] [this court] to conclude that the defendants could be found to have acted wantonly, recklessly or maliciously [in violation of § 4-165]." (Internal quotation marks omitted.)

After additional discovery, the defendants renewed their challenge to the court's subject matter jurisdiction, this time through a motion for summary judgment, which was accompanied by twenty supporting documents, including affidavits, deposition transcripts and other documentary evidence. The defendants argued that they were protected by sovereign immunity and statutory immunity because there was no genuine issue of material fact as to whether they had acted beyond their statutory authority or whether their actions were wanton, reckless or malicious. The plaintiffs objected to the motion for summary judgment, incorporating by reference the documents that they had submitted with their objection to the motion to dismiss. Rather than applying the standard for summary judgment, however,

---

[8] The defendants attached to their motion to dismiss ten documents, including an affidavit from Donis, emergency room reports from Backus regarding Kaylee Manifold and Matthew Manifold, the department's petition for neglect, the custody order, an affidavit from Days, notes from the Norwich Pediatric Group, the motion to vacate orders of temporary custody, the motion to amend the neglect petitions and the social study for Superior Court juvenile matters.

[9] The plaintiffs attached to their objection to the defendants' motion to dismiss eight documents, including the department investigation protocol, affidavits from Michael Manifold and Zaks, two affidavits from Cusmano and deposition transcripts from Zaks, Days and Knight.

the court treated the defendants' motion as a motion to dismiss. Consequently, the court reiterated its conclusion from its first memorandum of decision and held that the allegations in the complaint, if proven, would expose the defendants to liability in both their official and individual capacities.

Although a motion to dismiss is certainly the preferred means of challenging the court's subject matter jurisdiction, we know of no authority for the proposition that subject matter jurisdiction can *never* be challenged through any other procedural vehicle, most importantly by means of a motion for summary judgment.[10] In fact, in the present case, Creutz and Backus filed a motion for summary judgment based on a claim that they were statutorily immune pursuant to General Statutes § 17a-101e (b). See *Manifold* v. *Ragaglia*, supra, 272 Conn. 411. The trial court, *Gordon, J.*, granted the motion, and our Supreme Court affirmed the judgment. Although the issue was not before that court, it is noteworthy that the Supreme Court did not indicate that a motion for summary judgment is an improper procedural vehicle through which to address a claim of statutory immunity. Moreover, we are persuaded that

---

[10] We note that our Supreme Court recently adjudicated a related issue in *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 844 A.2d 836 (2004). In that case, the defendants moved in the Probate Court to dismiss on the ground that the plaintiff lacked standing. Id., 445. The Probate Court denied the motion. Id. The defendants then moved in the Superior Court for summary judgment, again challenging the plaintiff's standing. Id. The court rejected the defendants' argument that the plaintiff lacked standing and denied the motion for summary judgment. Id., 446.

On appeal to the Supreme Court, the court noted that because the defendants' motion for summary judgment challenged the plaintiff's standing, it would be treated *as a motion to dismiss because that was the proper procedural vehicle to raise such a claim. Id., 445 n.5. We agree that standing, as an aspect of subject matter jurisdiction, is properly addressed through a motion to dismiss. Nonetheless, we find nothing in *Cadle Co.* that *precludes* a court from addressing a challenge to the court's subject matter jurisdiction through a motion for summary judgment.

the circumstances of this case provide strong support for the proposition that a motion for summary judgment can and should be used to address claims for lack of subject matter jurisdiction in certain circumstances, particularly when, as here, a motion to dismiss has been denied, but additional discovery may provide the court with further evidence on which to decide the claim.

Practice Book § 17-49 provides in relevant part that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Furthermore, "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle[s] him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Gould, Larson, Bennet, Wells & McDonnell, P.C.* v. *Panico*, 273 Conn. 315, 321, 869 A.2d 653 (2005).

Whereas a motion to dismiss is decided only on the allegations in the complaint and the facts implied from those allegations, summary judgment is decided by looking at *all* of the pleadings, affidavits and documentary evidence presented to the court in support of the motion. The latter standard, therefore, takes account of the facts that have been developed through discovery, rather than merely relying on the plaintiffs' allegations at the outset of the action. Once litigation has advanced through discovery, the requirement that a court rigidly apply the standard for a motion to dismiss to issues regarding subject matter jurisdiction, even if the issue

is presented through a motion for summary judgment, seems to us too narrow an interpretation of the rules of practice. See Practice Book § 1-8 (noting that rules should be interpreted liberally to facilitate business and advance justice). The better approach, we conclude, is for the trial court to treat the motion as a motion for summary judgment, as it was presented, and to evaluate the issue of subject matter jurisdiction on the basis of a thorough review of the pleadings, affidavits and any other documentary proof submitted by the parties.

Our resolution of that issue is also influenced by the well settled principle that subject matter jurisdiction can be raised at any time. *Peters* v. *Dept. of Social Services*, supra, 273 Conn. 441. Consequently, it may be raised after significant discovery has occurred, at trial, or even on appeal. The possibility that the court's subject matter jurisdiction may be challenged at each stage of litigation militates against requiring litigants to use the motion to dismiss at all times to bring the issue to the court's attention. If the motion to dismiss was the *only* procedural vehicle by which subject matter jurisdiction could be contested, courts may not consider evidence produced through discovery that is relevant to the determination. Further, the importance of resolving any jurisdictional defects as early as possible in the litigation, so as not to waste judicial resources or the resources of the parties involved, favors the use of summary judgment as an additional procedural vehicle by which to challenge subject matter jurisdiction. Doing so enables the court to undertake a more complete evaluation of whether subject matter jurisdiction exists before proceeding to trial.[11]

---

[11] We certainly do not suggest that a motion for summary judgment takes the place of a motion to dismiss as the proper procedural vehicle with which to challenge a court's subject matter jurisdiction. We conclude, rather, that the use of the motion for summary judgment to contest subject matter jurisdiction is appropriate in two circumstances: (1) when a party does not become aware of a jurisdictional defect until discovery has progressed; or (2) if, after a court has denied a motion to dismiss on jurisdictional grounds,

That reasoning is even more pertinent to questions involving sovereign or statutory immunity. When sovereign immunity applies, the state is immune from liability, as well as from suit. *Shay* v. *Rossi*, supra, 253 Conn. 165. The same protection from liability and suit is afforded by statutory immunity under § 4-165. See *Carrubba* v. *Moskowitz*, supra, 81 Conn. App. 396 n.8. The aspect of sovereign immunity that protects the state from suit, however, is rendered meaningless if the issue is not fully resolved prior to trial. Indeed, the state sacrifices some of that protection even if the issue is resolved after discovery has commenced because the state is still forced to invest the resources necessary to defend the suit. "Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property." (Internal quotation marks omitted.) *Miller* v. *Egan*, supra, 265 Conn. 314. Because that rationale applies as much to subjecting the state to suit as it does to subjecting the state to liability, we are persuaded that the policy behind sovereign immunity is better effectuated through a thorough review of the materials before the court, as on a motion for summary judgment, rather than through the more limited review associated with the motion to dismiss.[12]

---

discovery produces additional evidence that supports dismissal of the action for lack of subject matter jurisdiction.

[12] We are further persuaded that sovereign immunity, as an aspect of subject matter jurisdiction, may be challenged on a motion for summary judgment on the basis of our review of the federal courts' approach to that issue. See *Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 487, 280 A.2d 359 (1971) (noting that Connecticut's summary judgment practice substantially similar to Federal Rule of Civil Procedure 56 [c]). As the United States Court of Appeals for the Second Circuit recently noted, the "[d]enial of [a] motion to dismiss on standing grounds does not preclude later consideration on summary judgment or indeed at trial as standing is an aspect of subject matter jurisdiction." *In re Bennett Funding Group*, 336 F.3d 94, 102 (2d Cir. 2003).

By treating the defendants' motion for summary judgment as a motion to dismiss, the court failed to consider the numerous affidavits, deposition transcripts and other documents that were submitted by both parties in support of their respective positions that sovereign immunity or statutory immunity either did, or did not, bar the plaintiffs' claims against the defendants in their official and individual capacities. The court's treatment of the defendants' motion effectively ignored almost two years of discovery that would have provided a far more complete picture of the jurisdictional issue than the allegations in the complaint, standing alone, could provide. Given the importance of resolving, as expeditiously as possible, whether subject matter jurisdiction exists, we conclude that the appropriate remedy is to remand this case to the trial court with direction to treat the defendants' motion as a motion for summary judgment and, accordingly, to review all of the defendants' and plaintiffs' supporting material.

### III

The defendants next argue that the court improperly denied their motion for summary judgment by failing to consider their claim that there was no genuine issue of material fact as to whether their conduct constituted intentional infliction of emotional distress and that they were entitled to judgment as a matter of law.[13] We disagree.

In their motion for summary judgment, the defendants argued that the plaintiffs were unable to establish a set of facts to support the claim that the defendants'

---

[13] Although the defendants frame their argument as one challenging the court's subject matter jurisdiction, the assertion that there is no genuine issue of material fact supporting the plaintiffs' claim for intentional infliction of emotional distress does not involve the court's subject matter jurisdiction. Rather, the defendants merely assert that the evidence concerning their conduct does not, as a matter of law, support the plaintiffs' claim sounding in intentional infliction of emotional distress.

conduct constituted intentional infliction of emotional distress. They argued that the undisputed facts prove that the defendants acted consistent with their statutory authority as employees of the department and that their conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community." (Internal quotation marks omitted.) *Little* v. *Yale University*, 92 Conn. App. 232, 239, 884 A.2d 427 (2005), cert. denied, 276 Conn. 936, 891 A.2d 1 (2006). They further asserted that it was the court's responsibility in the first instance to determine whether the plaintiffs' allegations could support a finding that the defendants' conduct was extreme and outrageous. In its memorandum of decision, however, the court did not address that claim. Instead, it focused only on the defendants' arguments regarding sovereign and statutory immunity.

"The proper procedure by which an appellant may ask the trial court to provide the factual and legal basis for a ruling, or to address a matter that it has overlooked in its decision, is to file a motion for articulation. See Practice Book § 66-5. A motion seeking articulation is appropriate in cases in which the trial court has failed to state the basis of a decision . . . [or] to clarify the legal basis of a ruling . . . [and it is the proper procedural vehicle] to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Murphy* v. *Zoning Board of Appeals*, 86 Conn. App. 147, 159, 860 A.2d 764 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1080 (2005).

As we have noted on prior occasions, "[i]t is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to

guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendants' claim] would be entirely speculative." (Internal quotation marks omitted.) *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 101, 861 A.2d 1160 (2004). "It is, therefore, the responsibility of the appellant[s] to move for an articulation or clarification of the record when the trial court has failed to state the basis of a decision. . . . [W]here the trial court's decision is ambiguous, unclear or *incomplete,* an appellant must seek an articulation . . . or this court will not review the claim." (Emphasis added; internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 635 n.13, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). Because the defendants have failed to satisfy their burden of providing this court with an adequate record for review, we decline to address their claim.

The denial of the motion for summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.