KAYLEE MANIFOLD ET AL. *v.* KRISTINE D. RAGAGLIA, COMMISSIONER OF CHILDREN AND FAMILIES, ET AL.
(AC 27818)

Harper, Lavine and Pellegrino, Js.

Argued February 8—officially released July 10, 2007

*Thomas C. Simones*, with whom, on the brief, were *Timothy A. Bishop* and *Stephen Burnham*, legal intern, for the appellants (plaintiffs).

*Maite Barainca*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (named defendant et al.).

*Opinion*

HARPER, J. The plaintiffs, Kaylee Manifold and Matthew Manifold, and their parents, Billie Jo Zaks and Michael Manifold, appeal from the summary judgment rendered by the trial court in their action against the defendant employees of the department of children and families (department).[1] On appeal, the plaintiffs claim that the court improperly rendered summary judgment on the grounds that the defendants were statutorily immune from suit pursuant to General Statutes § 4-165 or, alternatively, because the plaintiffs could not establish a cause of action for intentional or negligent infliction of emotional distress. The plaintiffs further contend that the court improperly concluded that they were not entitled to the injunctive relief requested in their complaint and deprived them of the opportunity to respond to arguments made in the defendants' brief in support of their motion for summary judgment. We affirm the judgment of the trial court.

Our Supreme Court set forth the facts relevant to this appeal in *Manifold* v. *Ragaglia*, 272 Conn. 410, 862 A.2d 292 (2004). "On April 21, 2001, an anonymous caller from the office of the plaintiffs' pediatrician at

---

[1] The following employees are the only defendants remaining in the action: (1) Richard Days, a social worker; (2) Daphne Knight, a social worker; (3) Nancy Leibeson-Davis, a social work supervisor; and (4) Antonio Donis, a program supervisor. All four defendants were sued originally in both their individual and official capacities; the claims against them in their official capacities, however, were later withdrawn. For the purpose of this appeal, we will refer to Days, Knight, Leibeson-Davis and Donis collectively as the defendants.

the Norwich Pediatric Group contacted the department to report that Kathleen Welch, a speech therapist with the Birth to Three Program, had noticed numerous bruises on both Matthew [Manifold] and Kaylee [Manifold], and a rash on Matthew [Manifold] while she was conducting a home based therapy session. In particular, Welch noticed that both children had bruises in the same location on their foreheads. [The children] were two and three years old, respectively, at this time.

"On April 24, 2001, [the defendant] Richard Days, a department social worker, made an unannounced visit to the plaintiffs' home. Days informed the parents of the reason for the visit, and they consented to his examining the children. He noted that both children were dirty and had bruised foreheads, while Matthew [Manifold] also had extensive bruising on his entire back and a rash on the front and back of his torso. Upon questioning by Days, [Michael] Manifold explained that he had not taken Matthew [Manifold] to the pediatrician because he thought the rash was from Matthew [Manifold's] recently having eaten $50 worth of chocolate. [Michael] Manifold explained to Days that his son bruised easily, and that he had sustained the bruises while roughhousing with his sister and playing with his new toy trucks and the family dog. Later that day, Days accompanied the plaintiffs to the office of their family pediatrician at the Norwich Pediatric Group.

"Upon their arrival, Days asked whether Richard Geller, the family's regular pediatrician, could examine the children to determine whether there was reasonable cause to suspect that they had been abused. Geller stated that he was unable to examine the children at that time and that they should not have been brought to his office; he advised Days to take the children to the emergency room at [William H. Backus Hospital (Backus Hospital)] if an immediate examination was needed. Days then made an appointment with Geller

for the following morning, but transported the plaintiffs to the . . . Backus [Hospital] emergency room for a more immediate evaluation.

"At . . . Backus [Hospital], [physician Robert] Creutz examined both children, and ordered an X ray of Matthew [Manifold]. The X ray revealed no fractures, but Creutz stated in the notes of his examination that Matthew [Manifold] had a rash and bruises on his head and chest, as well as three large bruises on his back. The report also noted that Matthew [Manifold] had bruises on his legs, knees, thighs and both buttocks. The parents told Creutz that the bruises were the result of roughhousing with the dog and his sister, as well as a fall. Both parents denied causing the injuries, and told Creutz that no one ever had struck Matthew [Manifold], except for 'pats on the bottom.' On the basis of the number and size of the bruises, Creutz concluded, however, that the bruises were typical of inflicted, rather than accidental, injuries, and he recommended further investigation of the injuries' source. He testified at his deposition that he did not order any blood tests to determine whether a blood disorder contributed to the bruising because the physical findings alone raised a sufficiently high suspicion of child abuse to require that it be ruled out, even if the blood test result was positive.

"Creutz explained the results of the examination to Days, who in turn discussed them with other department personnel. Shortly thereafter, Jorge Osorio, a department supervisor, authorized a ninety-six hour hold of the children pursuant to General Statutes § 17a-101g (d). The children then were taken into department custody with the assistance of local police, and were placed in a licensed foster home. The department subsequently applied for and obtained orders of temporary custody of the children from the Superior Court for Juvenile Matters, *Driscoll, J.,* on April 25, 2001.

"On April 25, 2001, Days met the children and the foster mother at the office of the Norwich Pediatric Group. At that time, Nancy Cusmano, a pediatrician, examined both children. Cusmano ordered blood tests for Matthew [Manifold], stating that a normal blood test would indicate a high probability of abuse. Upon receiving the results of the test, however, Cusmano informed Days that Matthew [Manifold's] blood test showed some abnormalities, including a very low blood platelet count that generally causes clotting difficulties. She said that this condition could explain both the bruising and the rash. . . . Cusmano referred Matthew [Manifold] to Joseph McNamara, a hematologist at Yale-New Haven Hospital (Yale), for further evaluation. Thereafter, McNamara diagnosed Matthew [Manifold] with idiopathic thrombocytopenic purpura, a blood disorder, and admitted him to Yale for treatment. The following day, April 26, 2001, McNamara advised Days that the marks and bruising were consistent with the blood disorder. Matthew [Manifold] subsequently was discharged from Yale. In light of this new information, the court granted the department's motion to vacate the orders of temporary custody. The department returned the children to the parents' custody later that same day, and Days relayed the Yale discharge instructions to them.

"The neglect petitions that were filed with the court on April 25, 2001, however, remained active, although the department amended them to remove the initial allegations of physical abuse. The case was transferred to the department's division of protective services for further monitoring and study. A social study subsequently was filed with the court, and the neglect petitions were withdrawn in October, 2001.

"In April, 2002, the plaintiffs instituted this action. In count one of the complaint, the plaintiffs alleged numerous acts of malice, negligence and recklessness

by the . . . defendants with respect to the investigation. In count two of the complaint, the plaintiffs alleged that Creutz committed medical malpractice by failing to order a blood test, which resulted in a misdiagnosis of child abuse rather than a blood disorder. In count three, the plaintiffs made claims against [Backus Hospital] derivative of Creutz' alleged malpractice. In count four, the plaintiffs alleged that the conduct of [the defendants, Creutz and Backus Hospital] constituted negligent infliction of emotional distress." (Citation omitted.) Id., 413–17. On the basis of these allegations, the plaintiffs requested an award of monetary damages and injunctive relief.

The court, *Gordon, J.,* rendered summary judgment as to counts two, three and four of the complaint in favor of Creutz and Backus Hospital, which was affirmed on appeal. See id., 410. On March 8, 2004, the defendants moved for summary judgment on the grounds that (1) the plaintiffs could not establish that the defendants' conduct was wanton, malicious or reckless, as required to defeat the statutory immunity from suit provided by § 4-165, (2) the defendants' alleged conduct was not "extreme and outrageous" as a matter of law and (3) the plaintiffs could not prove that they were entitled to any of the injunctive relief requested in their complaint. The court, *Martin, J.,* denied the motion. Thereafter, the defendants appealed to this court, arguing that the court improperly treated their motion for summary judgment as a motion to dismiss.

On February 28, 2006, this court issued an opinion in which it agreed with the defendants and, accordingly, reversed the judgment of the court. See *Manifold* v. *Ragaglia,* 94 Conn. App. 103, 891 A.2d 106 (2006). On remand, the court, *Hon. Robert C. Leuba,* judge trial referee, rendered summary judgment on all counts in favor of the defendants. This appeal followed.

## I

The plaintiffs claim that the court improperly rendered summary judgment on all counts of their complaint. The argument has two components. With regard to their emotional distress claims, the plaintiffs contend that the court improperly concluded that the defendants were immune from suit under § 4-165 or, alternatively, that the plaintiffs could not establish a colorable claim of either intentional or negligent infliction of emotional distress. With respect to their demand for injunctive relief, the plaintiffs assert that the court improperly rendered summary judgment on the basis of its conclusion that they failed to demonstrate that they would suffer irreparable harm or that they lacked an adequate remedy at law. We address each argument in turn.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . .

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally

and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pepitone* v. *Serman,* 69 Conn. App. 614, 618, 794 A.2d 1136 (2002).

Furthermore, as our Supreme Court has cautioned, "a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.,* 259 Conn. 527, 550, 791 A.2d 489 (2002).

A

The plaintiffs first claim that the court improperly determined that their causes of action are barred by the statutory immunity provided by § 4-165. Specifically, the plaintiffs contend that the evidence before the court raised a genuine issue of material fact as to whether the defendants acted wantonly, recklessly and maliciously, and were thus not entitled to immunity under § 4-165.[2] We are not persuaded.

General Statutes § 4-165 (a) provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, *not wanton, reckless or malicious,*

---

[2] Additionally, the plaintiffs claim that the court improperly failed to construe the evidence and pleadings in the light most favorable to them in determining that they had not established colorable claims of intentional and negligent infliction of emotional distress. Because we conclude that the defendants enjoy immunity from suit under § 4-165, we do not reach the merits of these alternate grounds on which the court rendered summary judgment.

caused in the discharge of his duties or within the scope of his employment. . . ." (Emphasis added.) Accordingly, the dispositive question in this appeal is whether the evidence in the record is sufficient to raise a genuine issue as to whether the defendants' conduct evinced a wanton, reckless and malicious intent.

In applying § 4-165, our Supreme Court has understood "wanton, reckless or malicious" to have the same meaning as it does in the common-law context. See *Shay* v. *Rossi*, 253 Conn. 134, 181–82, 749 A.2d 1147 (2000), overruled in part on other grounds, *Miller* v. *Egan*, 256 Conn. 301, 325, 828 A.2d 549 (2003). Under the common law, "[i]n order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Id., 181.

On appeal, the plaintiffs draw our attention to two key allegations in the amended complaint, which, they argue, are supported by the evidence and raise a genuine issue as to whether the defendants acted wantonly, recklessly and maliciously. First, the plaintiffs alleged that the defendants filed the neglect petitions, removed the children from the home and pursued their investigation despite having knowledge that such actions were

unsupported by the evidence. Second, the plaintiffs alleged that the defendants "pursued the petitions and supervision of the family, not for the statutory purpose of protecting the Manifold children, but in order to justify their own prior actions . . . ." In *Shay* v. *Rossi*, supra, 253 Conn. 134, our Supreme Court confirmed that wanton, reckless and malicious conduct can include actions taken with the improper and self-serving purpose of justifying prior unjustified actions. Id., 182. As a consequence, if the defendants knowingly and unjustifiably filed neglect petitions and prolonged their investigation of the family, as the plaintiffs allege, § 4-165 would afford them no refuge from suit.

*Shay* also made it clear, however, that to overcome the immunity provided under § 4-165, a plaintiff must produce *facts* from which a reasonable person could infer that the defendant acted with the requisite mental state of recklessness and malice. Id., 174–75. Here, the plaintiffs assert that there is evidence in the record establishing the following supporting facts: (1) that the defendants commenced their investigation without direct evidence concerning the parents' alleged abuse of the children; (2) that on April 24, 2001, while at the Backus Hospital emergency room, Days and the defendant Daphne Knight, a department social worker, "refused" to permit additional testing on Matthew Manifold to determine if the bruising could have been caused by a medical condition; (3) that Days knowingly filed a false affidavit with the Juvenile Court in order to receive an order of temporary custody of the children; and (4) that although the allegations of physical abuse were removed from the neglect petitions soon after the discovery of Matthew Manifold's illness in April, 2001, the department did not terminate its investigation until December, 2001.[3]

---

[3] As further proof of the defendants' alleged improper motives, the plaintiffs also cite evidence indicating that Zaks suffered extreme emotional distress as a result of the department's actions in this case. While not disregarding such evidence, we also cannot ignore that in furtherance of

In rendering summary judgment, the court concluded that the four supporting "facts" offered by the plaintiffs were either contrary to the evidence or insufficient to raise a genuine issue as to whether the defendants' actions were wanton, reckless and malicious. Even after construing the facts adduced from the record in the light most favorable to the plaintiffs, we agree that the plaintiffs have failed to raise a genuine issue on this point.

At the outset, we observe that only the third factual allegation, concerning Days' filing of a false affidavit, is pertinent to the question of whether the defendants acted wantonly, recklessly and maliciously. The remaining three allegations, even if they were proven, would not raise an inference that the defendants' conduct exceeded the bounds of negligence or gross negligence, as required to defeat summary judgment on the ground of statutory immunity.[4] As a result, although

its statutorily defined purpose of protecting children from abuse, the department may be forced to take actions that parents will find extremely distressful. As a result, evidence that family members may have suffered emotional distress does not raise a genuine dispute as to the existence of an intent to inflict such distress on them.

[4] We cannot accept the plaintiffs' claim that the defendants' investigation into the suspected abuse and neglect of the Manifold children is, by itself, evidence of a wanton, reckless and malicious intent on the defendants' part. On the contrary, upon receipt of a report concerning the potential abuse and neglect of the Manifold children, the department was under a statutory duty to conduct an investigation and, if necessary, to "authorize any employee of the department . . . to remove the child and any other child similarly situated . . . without the consent of the child's parent or guardian. . . ." General Statutes § 17a-101g (e).

Furthermore, we reject the plaintiffs' suggestion that the department must be absolutely certain as to the existence of abuse before taking action to ensure the safety of the children at issue. Section 17a-101g (e) compels the department to act if there is "*probable cause to believe* that the child . . . is in imminent risk of physical harm from the child's surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety . . . ." (Emphasis added.) The statute does not require the department to first rule out all alternative explanations for the circumstances giving rise to the suspicion of abuse, and the plaintiffs have cited no law establishing the existence of such a duty.

those allegations may be genuinely in dispute, they are not genuine issues of *material fact* that would challenge the defendants' entitlement to immunity under § 4-165. See *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 556 (material fact defined as "a fact which will make a difference in the result of the case" [internal quotation marks omitted]).

With regard to the third allegation, that Days knowingly filed a false affidavit in order to receive an order of temporary custody, the court concluded that such an assertion was contrary to the evidence in the record. We agree. Beyond the allegations set forth in the complaint, we are unable to find, and the plaintiffs have not cited, any *evidence* in the record substantiating their claim that Days' affidavit was not only false, but that Days knew it was false at the time that he filed it with the court. In fact, all of the evidence in the record supports the exact opposite conclusion, namely, that the statements made in Days' affidavit were truthful in light of the facts known at the time and that Days filed the affidavit in good faith.[5]

---

[5] With regard to the veracity of the statements made in Days' affidavit, we note that his suspicion of abuse was founded on the medical opinion of Creutz, and Days' personal observations regarding the extent and severity of Matthew Manifold's injuries. We also observe that during her deposition, Zaks was unable to identify any specific statement in the affidavit that she believed to be factually inaccurate, despite being questioned extensively about the statements contained therein.

In terms of Days' intentions in filing the affidavit, we draw attention to the plaintiffs' admission in paragraphs nineteen and twenty of their amended complaint that Days filed the neglect petitions in reliance on the statements and conclusions of Creutz. Furthermore, it is undisputed that Days promptly returned the children to their parents after learning of Matthew Manifold's blood disorder, and the department filed a motion to vacate the orders of temporary custody on April 26, 2001, the day after Matthew Manifold's diagnosis. The rapid return of the children, coupled with the immediate filing of the motion to vacate the orders of temporary custody, strongly suggests that neither Days nor the department acted with wanton, reckless or malicious intent when responding to the situation.

As stated previously, "[m]ere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Id., 550. The dearth of evidence suggesting that the defendants acted with wanton, reckless and malicious intent is what distinguishes this case from *Shay* v. *Rossi*, supra, 253 Conn. 134. There, our Supreme Court concluded that the facts in the record raised a triable issue as to whether the department defendants acted with improper motives and with the self-serving purpose of justifying prior unjustified actions.

In contrast to *Shay*, however, the plaintiffs here have failed to supply evidence that would raise a genuine issue as to whether the defendants' conduct evinced a wanton, reckless or malicious intent on their part. In the absence of a genuine dispute as to that question, the court concluded properly that the defendants were immune from suit pursuant to § 4-165.

### B

Because the defendants are entitled to statutory immunity from suit, the plaintiffs cannot pursue their claim for monetary damages on the basis of intentional or negligent infliction of emotional distress. See *Martin* v. *Brady*, 261 Conn. 372, 375–77, 802 A.2d 814 (2002). Our inquiry has not ended, however, because the plaintiffs' amended complaint also requested injunctive relief in the form of court orders directing (1) the defendants to expunge all of the department's records relating to the plaintiffs and (2) the department "to inform its investigators of the facts and circumstances attending wrongful removals, so that injury to similar families can be averted."

"The granting or denial of injunctive relief rests within the discretion of the trial court. . . . To obtain

such relief, the applicants must demonstrate that they would suffer irreparable harm and that they lack an adequate remedy at law. . . . Our review of the trial court's denial of injunctive relief is limited to determining whether the decision was based on erroneous statements of law or on an abuse of discretion." (Citations omitted.) *Citicorp Mortgage, Inc.* v. *D'Avanzo*, 31 Conn. App. 621, 627, 626 A.2d 800, cert. denied, 227 Conn. 909, 632 A.2d 688 (1993), cert. denied, 510 U.S. 1195, 114 S. Ct. 1303, 127 L. Ed. 2d 655 (1994).

With regard to the plaintiffs' first request, the court refused to issue the injunction because the plaintiffs failed to exhaust their administrative remedies. See *Housing Authority* v. *Papandrea*, 222 Conn. 414, 418–19, 610 A.2d 637 (1992). Section 17a-101 (e)-4 (d) of the Regulations of Connecticut State Agencies expressly provides in relevant part that "[r]eports of child abuse or neglect determined to be unfounded will be expunged from the Child Abuse and Neglect Registry . . . ." In accordance with that regulation, the department has created a procedure whereby a person may challenge a finding of child abuse in a hearing before an administrative tribunal. See Department of Children and Families Policy Manual, §§ 22-12-2 through 22-12-8.

Here, the plaintiffs have not alleged, and the record does not reflect, whether there was a hearing concerning the merits of the accusations of neglect.[6] Furthermore, the plaintiffs have not claimed that they requested

[6] The plaintiffs argue in their brief that they could not avail themselves of this administrative procedure because this case involved "statutory issues of sovereign immunity . . . ." In support of this contention, the plaintiffs remind us that administrative decisions involving the construction or interpretation of statutes are reviewed de novo. Besides its reliance on the faulty premise that this case raises issues of statutory construction, this argument misses the point. "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) *Housing Authority* v. *Papandrea*, supra, 222 Conn. 420. As such, the amount of deference accorded to an agency's determination

a hearing to determine whether the department should expunge its records pursuant to § 17a-101 (e)-4 of the Regulations of Connecticut State Agencies. Under these circumstances, we cannot say that the court abused its discretion in refusing to issue the requested injunctive order.

Turning to the plaintiffs' second request for injunctive relief, the court observed that the plaintiffs failed to allege that the department does not currently educate its investigators about "the facts and circumstances attending wrongful removals . . . ." Indeed, the comprehensive nature of the regulations governing the removal of children is indicative of a strong departmental concern about the danger of taking such action without legitimate cause. See Regs., Conn. State Agencies §§ 17a-101-11 through 17a-101-13 and 17a-101 (e)-1 through 17a-101 (e)-5. In light of these facts, and the lack of any evidence in the record to the contrary, we conclude that the court did not abuse its discretion in refusing to grant the requested injunctive relief.

## II

Last, we address the plaintiffs' claim that the court improperly relied on arguments made for the first time in the defendants' brief in support of their motion for summary judgment. Specifically, the plaintiffs contend that the parties' submission of simultaneous briefs deprived them of a chance to respond to the defendants' brief. We are not persuaded.

The following additional facts are pertinent to our resolution of the plaintiffs' claim. On March 27, 2006, the plaintiffs amended their complaint in order to reflect the dismissal of Creutz and Backus Hospital as defendants in the action. Thereafter, the defendants filed a

is wholly unrelated to whether the court has jurisdiction by virtue of the plaintiffs' exhaustion of all available administrative remedies.

motion requesting that the court apply their pending motion for summary judgment and supporting documents to the amended complaint. The court granted the motion.

On April 19, 2006, a hearing was held concerning the defendants' motion for summary judgment. During the hearing, the defendants raised several legal issues related to their motion, including the reasoning employed by the Supreme Court in *Manifold* v. *Ragaglia*, supra, 272 Conn. 410. After listening to arguments from both parties, the court observed that the plaintiffs' legal position had changed somewhat in accordance with their recent amendments to the complaint. Consequently, the court asked each party to submit simultaneously new briefs outlining their current legal arguments. Neither party objected to that course of action.

On May 12, 2006, the parties submitted their briefs simultaneously to the court for consideration. Thereafter, on June 15, 2006, the court issued a memorandum of decision rendering summary judgment in favor of the defendants on all counts. It is undisputed that the plaintiffs neither filed an objection to the defendants' brief on the ground that it contained new legal arguments, nor asked the court for an opportunity to respond thereto.

The plaintiffs concede that they never objected to the court's suggestion that they file their briefs simultaneously or filed a request for permission to file a supplemental brief responding to the new arguments made by the defendants. Nevertheless, they request that we reverse the judgment on this ground pursuant to the plain error doctrine. See Practice Book § 60-5. On the basis of the record before us, we conclude that granting such relief would be quite inappropriate.

As our Supreme Court often has stated, "the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious

that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). Here, the plaintiffs did not receive an opportunity to respond to the defendants' arguments only because they failed to request it. There is no evidence suggesting that the court would have denied the plaintiffs' request had such a request been made. Because the failure to respond was solely and inexplicably self-induced, it did not create the sort of "extraordinary situation" that would warrant reversal as plain error.

The judgment is affirmed.

In this opinion the other judges concurred.